540 A.2d 1180

**STATE of Maryland**

v.

**Richard CALDWELL.**

**No. 1352, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

May 10, 1988.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Stuart O. Simms, State's Atty. for Baltimore City and Reid Rubin, Asst. State's Atty. for Baltimore City, on the brief), Baltimore, for appellant.

Clarence W. Sharp, Annapolis (John S. Denholm, Jr., Baltimore, on the brief), for appellee.

Argued before MOYLAN, WILNER and BLOOM, JJ.

WILNER, Judge.

We shall affirm a judgment of the Circuit Court for Baltimore City dismissing an indictment against appellee Richard Caldwell on the ground that to do otherwise would place him in double jeopardy in violation of the Federal and State Constitutions.

The underlying facts are fairly straightforward and not in substantial dispute.

During the morning and early afternoon of April 1, 1987, police detective Glen Olivi received information from an informant that Caldwell would be in the vicinity of the 4500 block of West Northern Parkway sometime after 6:00 p.m. with a large amount of heroin in his possession. The informant was known to Detective Olivi and had supplied reliable information to him in the past; he claimed that he had received the information as to Caldwell from Caldwell himself.

In response, Olivi and other officers established a surveillance. At about 6:40 p.m., Caldwell arrived at a Wendy's restaurant in the 4500 block, got out of his car, and was promptly arrested, without benefit of a warrant. On the

floor of the car, directly behind the driver's seat, police found a bag containing 253 glassine bags of heroin. The search of the car was incident to the arrest, and the probable cause for the arrest was based solely on the information supplied by the informant, supplemented to some extent by a limited surveillance on Caldwell's car during the early afternoon. The State conceded that nothing that Caldwell did upon his arrival would have independently justified the arrest.

Caldwell was charged in a two-count indictment with possession of heroin in sufficient quantity to indicate an intent to distribute the substance (Md.Code Ann. art. 27, § 286) and with simple possession (§ 287). On May 7, 1987, Caldwell's first defense counsel, Paul M. Weiss, Esq., filed an omnibus discovery motion seeking, among other things, the names and addresses of all informants "who participated in any illegal act which was relied upon by any law enforcement official as probable cause to make an arrest and/or search in this case." Three weeks later, counsel filed a motion to suppress the evidence seized from the car and from Caldwell's person on the ground that the police had insufficient probable cause to make the arrest and search.

The two matters were set for hearing on September 14, 1987, before Judge Bothe. At that point, Mr. Weiss had been replaced as defense counsel by John S. Denholm, Esq. At the conclusion of that hearing, Judge Bothe denied the motion to suppress, finding probable cause for the warrantless arrest. Mr. Denholm then decided not to press the motion filed by Mr. Weiss to compel disclosure of the informant, the reason being that he already had learned the identity of the informant. In subsequent testimony, Mr. Denholm stated that he knew who the informant was by August 27—that "after talking to the witnesses of what occurred on [April 1] and all of the circumstances surrounding it, it was obvious who the informant was." He believed the informant to be one Steve Brown, also known as Steve Hunt, which the State later conceded to be the case.

In place of the motion, Mr. Denholm had prepared subpoenas addressed to Detective Dorsey McVicker, of the Baltimore City Police Department, directing Detective McVicker to appear in court "and to produce all records of arrests, photographs, criminal records (rap sheets) of one, Steve Brown a/k/a Steve Hunt and to produce the body of one Steve Brown a/k/a Steve Hunt in Court...." Denholm asked the court to issue that subpoena and to call Brown/Hunt as its witness. He claimed that because the case had been on the "move list" (see *State v. Frazier*, 298 Md. 422, 427, 470 A.2d 1269 (1984)) since August 27, he had been unable to issue the subpoena earlier because there was no fixed trial date. Judge Bothe denied the request.

At the conclusion of these preliminary matters, a jury was selected and sworn, but further proceedings were continued until the next morning, September 15. In his opening statement, the prosecutor informed the jury briefly that the police had received certain information that Caldwell would be in possession of heroin, that they undertook a surveillance and ultimately arrested him, and that, in the ensuing search, they found 253 bags of heroin, $511 in cash, and a beeper.

In his opening address, Mr. Denholm essentially acknowledged that the heroin was found in Caldwell's car but sought to focus on whether the State could prove that Caldwell knew the drugs were there. In that regard, he said:

"Richard Caldwell was set up. There were an informant in this case, an informant by the name of Steve, Steve Brown, Steve Hill, Steve Hunt.

Steve is a large time smuggler and dope dealer, who was arrested by the same officers in this case. He was also given a task to do for his freedom."

At that point, the prosecutor objected, asking rhetorically how Mr. Denholm could "say that the informant is a particular person when he has not filed any motion and cannot prove that." After some discussion at the bench, Judge

Bothe overruled the objection, noting that "if their theory of the thing is that it was Steve Brown who placed the drugs in the car, I can't bar them from making that defense." Responding to the prosecutor's further charge that by not pressing his motion to compel disclosure of the informant, Denholm was acting in bad faith by naming the informant, the court observed, "You are confusing things. The fact that he did not attempt to get the name of the informant but thinks he knows who it was, I cannot bar him from the defense, which is a rather obvious one, I cannot do that."

Mr. Denholm then proceeded to elucidate further on his expected defense, telling the jury:

"As I was stating before, on April 1, Mr. Caldwell was called by a Mr. Brown who asked him to come to Wendy's to meet him, and he went to Wendy's, parked his car, got out of the car and was almost there when he was arrested. Mr. Brown is the drug dealer. Mr. Brown is the smuggler. Mr. Brown had that car—that is the same car that he was arrested in—earlier that day.

Mr. Brown had access to that car for over an hour. Mr. Brown was observed with a bag that was eventually taken by the police that contained drugs. That is Mr. Brown."

At the conclusion of opening statements, the court took a recess and discussed the matter further with counsel. It was at that point that the prosecutor acknowledged privately that Steve Brown was indeed the informant but argued that Denholm should be precluded from bringing that out at trial. Although, up to that point, Judge Bothe had agreed that the proposed defense was a legitimate one and that Denholm's abandonment of the motion to compel disclosure of the informant was irrelevant, she suddenly did a 180-degree turn and concluded that Denholm had acted in bad faith. By abandoning the motion, the court now held, Denholm led the State to assume that it would not be called upon to reveal the name of the informant. Further:

"I regard that conduct on the part of the defense to be a deliberate obstruction of the orderly procedure of the court. There are ways in which cases should be tried. Apparently the Defendant was aware all along of what he proposed to defend the case on, which would involve the identity of the informant, and because he thinks that he knows the identity, felt that he would not have to pursue the motion which would put the State in the position to determine whether to continue to protect the identity of the informant.

That is not a decision that the State should be required to make after a jury is selected and after the defendant reveals his theory of defense for the first time which does require the State to either abandon a good part of its offense to the defense or the case altogether."

Judge Bothe made clear that, had Mr. Denholm pressed the motion, it would have been granted. The State would then have been able to make an election, before jeopardy attached, whether to proceed in light of that condition or abandon the prosecution. Upon that reasoning, the court *sua sponte* found a manifest necessity to grant a mistrial and did indeed grant a mistrial.

Caldwell thereupon moved to dismiss the indictment on the ground of double jeopardy. At a hearing on the motion before Judge Noel, he argued that Denholm had done nothing wrong, that there was no need to press prior counsel's motion to compel disclosure because he already knew who the informant was, and that there was no manifest necessity for a mistrial. Denholm testified that he had prepared a subpoena for Mr. Brown on or about August 27 but was unable to file it because the case was on the "move list" and had no fixed trial date. He stated further that, at least after Judge Bothe refused to call Brown as a court witness, he decided not to call him as a defense witness because "I didn't need him. I had three or four witnesses who were going to say what he did and how he did it."

After hearing from both the prosecutor and Mr. Denholm, Judge Noel reached a number of conclusions. It was obvious to him, as indeed it must be to anyone, that by the time of trial Mr. Brown was no longer a confidential informant. Caldwell was prepared to testify that Brown had called him earlier in the day and set up the meeting at Wendy's. The point at issue, then, was not whether the State should be compelled to reveal the name of its confidential informant but whether the defense had a right to reveal that name in support of its position that Caldwell had been "set up" by Brown. Though expressing the belief that the matter "could have been handled much better," Judge Noel found that Denholm had done nothing illegal or improper, that he had no legal obligation to inform the prosecutor in advance of his intention to name Brown. On that basis, he found no manifest necessity for the mistrial and therefore granted the motion to dismiss.

■ The State has appealed, arguing that Judge Noel erred in determining that there was no manifest necessity for the mistrial. The heart of its argument is that the defense was guilty of some gross misconduct—that its tactics "forced the State into a position of having to choose between breaching its agreement with the informant by disclosing his identity . . . or forever foregoing prosecution against Appellee by dismissing the charges after jeopardy had attached."

We fail to see any basis whatever for the State's argument or for the mistrial, and we shall therefore affirm.

The motion to compel disclosure of the informant was filed early in the proceeding by Mr. Weiss. It was not an unreasonable motion to file at that time. Given the fact that all, or nearly all, of the incriminating evidence against Caldwell was that seized incident to his arrest, that the arrest was without benefit of a warrant, and that its validity rested almost entirely on the reliability of informa-

tion received from a confidential informant, the motion had at least an arguable basis under *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

All that changed, however, in the ensuing two or three months, and especially after the court denied the motion to suppress the evidence taken from Caldwell and his car. At that point, there was no longer any question of revealing a confidential informant; indeed, there was no informant issue at all. Caldwell knew who had called him, who had set up the meeting at Wendy's. His argument—his defense—was that Brown had planted the drugs in his car; he was apparently prepared to show, or attempt to show, that Brown had set him up and sacrificed him as part of a deal Brown had with the State.

■ As Judge Bothe herself initially recognized, that was a legitimate defense, to the extent that there was any factual basis for it, and Mr. Denholm had every right to inform the jury in his opening statement of what the defense would be. To argue, as the State did, that Denholm had no right to assert the name of the person who actually (in his view) planted the drugs in Caldwell's car without first telling the prosecutor that he intended to do so is absurd. Beyond the limited scope of discovery required by law, defense counsel is not required to inform the State of his strategy in order to allow the prosecutor to prepare countermeasures. Moreover, even if there were some such requirement, in this case it would have made no difference. The State's choice, and the consequences flowing from it, would have been the same even if Mr. Denholm had apprised the prosecutor of his intention before trial commenced. It would either have pursued the prosecution or abandoned it; if it chose to abandon the prosecution, it would have been in no worse position than it is now.

JUDGMENT AFFIRMED; MAYOR AND CITY COUNCIL OF BALTIMORE TO PAY THE COSTS.