555 A.2d 1078

**STATE of Maryland**

v.

**Charles FRAZIER and Marshall Frazier.**

**No. 1064, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

April 4, 1989.

---

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Attorney for Montgomery County, Rockville, on the brief), for appellant.

J. Theodore Wiesman, Dist. Public Defender, Rockville (Alan H. Murrell, Public Defender and George E. Burns, Jr., Asst. Public Defender, on the brief, Baltimore), for appellee.

Argued before BLOOM, ROSALYN B. BELL and WENNER, JJ.

ROSALYN B. BELL, Judge.

The sole question presented here is whether a judge of the Circuit Court for Montgomery County erred by dismissing criminal charges against Charles and Marshall Frazier. The judge who presided at the Fraziers' trial (trial judge) declared a mistrial after defense counsel asked a cross-examination question that the trial judge thought was impermissible in light of his prior evidentiary ruling. The judge who dismissed the case (motions judge)[1] determined that

---

1. Two different judges were involved in this case: (1) the judge who presided at the Fraziers' trial and who declared a mistrial, and (2) the

retrial of the Fraziers would violate the constitutional prohibition against double jeopardy. We affirm the motions judge's decision and will explain why dismissal was appropriate. But first, we must supply the relevant facts.

Charles and Marshall Frazier were charged in the District Court for Montgomery County with the battery of Malcolm McCall. These charges stemmed from a fight, seemingly over long-simmering domestic resentments.[2] The Fraziers and McCall met, presumably to discuss these differences, and a fight ensued, during which McCall's jaw was injured. Because the Fraziers wanted a jury trial, the cases against them were consolidated and moved to the circuit court.

The State moved *in limine*[3] for a ruling to exclude evidence of victim McCall's conviction for assault. When asked by the trial judge whether they intended to use evidence of this conviction, defense counsel replied that, although they were aware that a prior assault conviction could not be used to impeach McCall's credibility, it *could* be used as evidence of self-defense. That is, the character evidence, *i.e.,* the assault conviction, could be used to show a defendant's reasonable belief that he was in danger and to corroborate evidence that the victim was the initial aggressor. The following exchange ensued:

---

judge who heard and granted the Fraziers' motion to dismiss on double jeopardy grounds. In order to make clear to whom we are referring, we designate the first as "trial judge" and the second as "motions judge."

2. Marshall Frazier's ex-wife Gail had lived with the alleged victim, Malcolm McCall, since her divorce from Frazier 12 years ago. There are three children from Gail's marriage to Frazier, Marshall Frazier, Jr., Lyn Frazier, and Shondell Frazier: all three children live with their mother and Malcolm McCall. There appeared to be some dispute between Marshall Frazier, and Gail and McCall about the raising of Marshall, Jr. which may have precipitated the fight.

3. The State's Attorney requested that the trial judge hear the State's motion at "the Bench because this is a delicate matter that cannot be heard in front of the defendant[s] because it would prejudice my motion[.]" The trial judge quite properly refused to hear the motion in this manner.

"[TRIAL JUDGE]: Do you intend to have your client take the stand on the self-defense defense?

[DEFENSE COUNSEL # 1]: I believe there are two witnesses we have that can make the elements of self-defense without my client taking the stand.

[STATE'S ATTORNEY]: Until such time, Your Honor, I do not think that it is proper at this point.

[TRIAL JUDGE]: All right. Well, you will maintain your witness here then until the appropriate foundation is laid?

[STATE'S ATTORNEY]: That's right.

[TRIAL JUDGE]: Okay, fine.

[DEFENSE COUNSEL # 1]: Your Honor, well then, let me just ask, in opening when I am going to be showing what our evidence will show, may I refer to that as part of my evidence which it will be in my case in chief if it does not come up on cross examination?

[TRIAL JUDGE]: Only if you assure me it is going to happen.

[DEFENSE COUNSEL # 1]: I do have a certified copy, and we will be admitting if it does not come up on cross.

[TRIAL JUDGE]: No, I will preclude you from using that in opening statement, but you can use it as evidence at the appropriate time.

[DEFENSE COUNSEL # 1]: Thank you.

[DEFENSE COUNSEL # 2]: Your Honor, may I ask, we have some evidence that we plan to bring in that has to do with the victim's history of violent temper and of beating people. Can we allude to that in the opening?

[TRIAL JUDGE]: Does the State object to that?

[STATE'S ATTORNEY]: Yes, Your Honor. Again, it is the same thing. Any acts of recent violent or threats or any of that cannot be established until there is an affirmative defense of self-defense. I am quoting you Barker v. State.

[TRIAL JUDGE]: Okay. No. The answer is no, you may not. Anything else?

[DEFENSE COUNSEL #1]: *We may not refer to specific acts?*

[TRIAL JUDGE]: Yes, correct.

[DEFENSE COUNSEL #2]: *Your Honor, just so that I am clear when it comes up, it is not this Court's order then that we cannot get in information about that through other witnesses other than—*

[TRIAL JUDGE]: *Oh, absolutely not.*

[DEFENSE COUNSEL #2]: *Not?*

[TRIAL JUDGE]: *You are correct, yes.*

[DEFENSE COUNSEL #2]: *So we can ask other witnesses about his temper?*

[TRIAL JUDGE]: *You can ask them any questions you want, and if there is an objection, we will rule on it one at a time.*

[DEFENSE COUNSEL #2]: Thank you, Your Honor.

[TRIAL JUDGE]: Anything else?

[STATE'S ATTORNEY]: Finally, Your Honor, nothing further." (Emphasis added.)

During her opening statement, counsel for Marshall Frazier stated, *inter alia*, that the jury would hear evidence "that Malcolm McCall is a very violent man and that he has a very bad temper." The trial judge sustained an objection by the State's Attorney.

The State called McCall as its first witness. The gist of McCall's testimony was: after receiving a phone call from Marshall Frazier, he met the Fraziers outside Summit Elementary School. An argument ensued, and Marshall Frazier jumped out of his car and attacked McCall. Charles Frazier jumped out shortly afterward and struck McCall in the face with what McCall thought was an automobile jack, rendering him unconscious.

On cross-examination, counsel for Marshall Frazier began by asking questions concerning the details of the fight and the underlying argument between Marshall, Jr., his mother and McCall; defense counsel asked approximately 60 ques-

tions before attempting to ask the following question. We set forth the question and the reaction that ensued:

"BY [DEFENSE ATTORNEY # 2]:

Q Mr. McCall, are you the same Malcolm McCall that was convicted of—

[STATE'S ATTORNEY]: Objection, Your Honor.

[TRIAL JUDGE]: Approach the Bench, please.

(Whereupon, a Bench Conference was held.)

[STATE'S ATTORNEY]: Your Honor, I am going to move for a mistrial. This is outrageous.

[TRIAL JUDGE]: What is that?

[STATE'S ATTORNEY]: You have already ruled that this witness is to stay here and that they were to [sic] to make any mention of it until they put on an affirmative defense in self-defense. That was clear.

[TRIAL JUDGE]: Yes, isn't that what we said before?

[DEFENSE ATTORNEY # 2]: You said we should not—this in opening, but—impeach him, but this is not impeachment. This goes to corroborate that the defendant—issue against him. It is not—

[TRIAL JUDGE]: Calm down. Calm down. What do you want to show?

[DEFENSE ATTORNEY # 2]: Well, when—I think I should give the witness an opportunity to admit to this before I put it in in my case in chief, and this—in my case in chief as I promised the State as I stated earlier.

[TRIAL JUDGE]: What are [you] asking for, a mistrial?

[STATE'S ATTORNEY]: Your Honor—

[TRIAL JUDGE]: Is that what you are asking for?

[STATE'S ATTORNEY]: Yes.

[TRIAL JUDGE]: Granted.

(Whereupon, the Bench Conference was concluded.)"

Thus, the trial judge granted the State's motion for mistrial; he informed the jury that he had declared a mistrial "for certain evidentiary grounds." The trial judge put nothing further on the record to indicate why he

thought the mistrial was warranted. The record contains a representation that the trial judge was occupied with *three* juries that day: he was waiting for two juries to complete deliberations while engaged in overseeing the instant case. The Fraziers subsequently took action to preclude a retrial by moving to dismiss the charges against them on double jeopardy grounds. After conducting a lengthy hearing, the motions judge granted the Fraziers' motion.

—Manifest Necessity—

The motions judge dismissed the case against the Fraziers (appellees) because there was nothing in the trial record from which it could reasonably be concluded that there was "manifest necessity" for a mistrial. We agree. Before proceeding further, we will provide some legal background about mistrials and double jeopardy so that the manifest necessity standard may be properly understood.

The Fifth Amendment to the federal Constitution provides, *inter alia,* "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." The Maryland Constitution contains no double jeopardy provision.[4] The Supreme Court, however, made the federal double jeopardy provision applicable to the states via the due process clause of the Fourteenth Amendment in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

As Judge Moylan pointed out in *West v. State,* 52 Md. App. 624, 628, 451 A.2d 1228 (1982), the term double jeopardy includes four distinct subspecies,[5] only one of which need

---

**4.** Maryland is one of only five states which never prohibited double jeopardy in its state Constitutions. "All five of those states, to be sure, do extend protection against double jeopardy, but as that protection has evolved at the common law." *West v. State,* 52 Md.App. 624, 626–27, 451 A.2d 1228 (1982). The common law protection does not necessarily track the federal law. Gilbert and Moylan, *Maryland Criminal Law: Practice and Procedure,* § 37.1 (1983).

**5.** The four subspecies are:

concern us here: under what circumstances may the State retry a criminal defendant after a mistrial has been declared?

A criminal defendant has a constitutional right to have his trial completed by a particular tribunal. *Wade v. Hunter,* 336 U.S. 684, 688–89, 69 S.Ct. 834, 836–37, 93 L.Ed. 974 (1949). In *United States v. Jorn,* 400 U.S. 470, 487, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971), the Supreme Court affirmed the dismissal of a retrial on double jeopardy grounds, holding that there was no manifest necessity for retrial. In *Jorn,* a tax fraud prosecution, the trial judge discharged the impaneled jury so that prosecution witnesses could consult attorneys before testifying. *Jorn,* 400 U.S. at 470, 91 S.Ct. at 550. The *Jorn* Court stated that the *Perez* doctrine (manifest necessity) "stands as a command to trial judges not to foreclose a defendant's option until a *scrupulous exercise of judicial discretion* leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Jorn,* 400 U.S. at 470, 91 S.Ct. at 550. (emphasis added). The *Jorn* Court rested its holding that the trial judge had abused his discretion in declaring a mistrial on the fact that the record indicated that the trial judge did not consider options less drastic than mistrial:

"When the prosecutor started to answer [in regard to what he intended to show at trial], the judge cut him off in midstream and immediately discharged the jury. *It is*

(1) *"Classic" former jeopardy:* subsequent (as opposed to simultaneous) jeopardy, where a criminal defendant has been previously tried and convicted or acquitted for the same offense.

(2) *Simultaneous jeopardy:* an example of this subspecies would be a multi-count indictment containing duplicative counts.

(3) *Mistrial:* under what circumstances may a criminal defendant be retried after a mistrial has been declared?

(4) *Collateral Estoppel:* there has been a factual determination in a different criminal offense which is binding in the instant offense. *E.g.,* defendant charged with robbery of two persons and at trial with first victim, only factual issue is whether the defendant was there, and the jury acquits. State cannot try the defendant for the second robbery.

*See generally,* Gilbert & Moylan, *Maryland Criminal Law, supra,* ch. 37.

*apparent from the record that no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so.* When one examines the circumstances surrounding the discharge of this jury, it seems *abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that,* taking all the circumstances into account, there was a manifest necessity for the *sua sponte* declaration of this mistrial." (Citations omitted) (emphasis added.)

In *Arizona v. Washington,* 434 U.S. 497, 503–04, 98 S.Ct. 824, 829–30, 54 L.Ed.2d 717 (1978), the Supreme Court underlined the value of the right of a criminal defendant to have his trial completed by a particular tribunal, stating:

"The reasons why this 'valued right' merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

* * * * * *

"Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. *Yet in view of the importance of*

*the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant."* (Emphasis added) (footnotes omitted.)

The classic formulation of manifest necessity is that of Justice Story, contained in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824):

"We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, *in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.* They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, *the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . .* But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office." (Footnote omitted) (emphasis added.)

 Thus, we see that, although a trial judge has the inherent discretion to declare a mistrial *sua sponte* or to declare it pursuant to the State's motion, he or she may declare a mistrial over the defendant's objection or without the defendant's acquiescence only if manifest necessity exists for the action. The State, in its brief, notes that appellees did not object to the mistrial. Looking at the trial record, it is clear that appellees' counsel opposed the mistrial. At the bench conference, defense counsel explained why her question was permissible. Additionally, the declaration of the mistrial followed so closely on the heels of

defense counsel's explanation that there appeared to have been no time to lodge a more formal objection. On these facts, it cannot be said that appellees acquiesced in the declaration of the mistrial. The situation is, therefore, similar to that in *Jorn*, 400 U.S. at 487, 91 S.Ct. at 558, in that the trial judge declared a mistrial so quickly that there was simply no opportunity for a defense objection. The crucial question is always whether the defendant has been deprived of his or her option to go to the first jury. This is why reprosecution is usually allowed where the defendant has moved for the mistrial. *See Jorn*, 400 U.S. at 470, 91 S.Ct. at 550. Thus, a defense *request* for a mistrial is usually treated as a waiver of a double jeopardy claim. *United States v. Tateo*, 377 U.S. 463, 467, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964). Even where the defendant has moved for a mistrial, if the State has engaged in intentional misconduct designed to goad the defendant into asking for it, the defense motion is not viewed as a waiver to a double jeopardy claim. *See West*, 52 Md.App. at 631, 451 A.2d 1228.

In *Arizona v. Washington*, 434 U.S. at 506, 98 S.Ct. at 830, the Court cautioned that manifest necessity is not a standard which can be applied mechanically; the standard must, instead, be viewed in light of the particular problem confronting the trial judge. The Supreme Court held in *Arizona* that a trial judge had not abused his discretion in declaring a mistrial because of the prejudicial impact of the defense attorney's improper opening statement. In reaching this result, the Court rejected the argument that, because the trial judge made no explicit findings as to why a mistrial was warranted, none existed. The Court observed, however, that "[t]he basis for the trial judge's mistrial order was adequately disclosed by the record, which includes the extensive argument of counsel prior to the judge's ruling." *Arizona*, 434 U.S. at 517, 98 S.Ct. at 836.

What, then, constitutes manifest necessity?

"The hung jury, inflammatory publicity contaminating the jury in either direction, prolonged sickness of judge or

counsel, the movements of an army in time of war—all of these have been held to constitute manifest necessity." Gilbert & Moylan, *Maryland Criminal Law, supra,* at 447.

Before turning to Maryland precedent, it is helpful to see generally how courts have applied the standard. Generally, a "manifest necessity" ground for a mistrial is one which arises from circumstances not within the control of prosecutor or court. *State ex rel. Betts v. Scott,* 165 W.Va. 73, 267 S.E.2d 173, 177 (1980). For example, one court found manifest necessity for a mistrial where a jury, after 30 hours of deliberation during four days, had twice declared itself hopelessly deadlocked, two jurors became physically ill, and several others were hysterical over the prospect of further confinement. *Commonwealth v. Hamilton,* 460 Pa. 686, 334 A.2d 588, 593 (1975). Another court affirmed the trial court's finding of manifest necessity for a mistrial where jurors accidentally met four codefendants at an elevator; the codefendants were heavily shackled, chained together and guarded by a contingent of United States Marshals. *United States v. Jarvis,* 792 F.2d 767, 769–70 (9th Cir.1986). At least one court has stated that manifest necessity arises *only* where continuation of the trial becomes useless; that is, when it is apparent that the verdict would be upset on appeal. *Sedgwick v. Superior Court of the District of Columbia,* 417 F.Supp. 386, 388 (D.C.D.C. 1976). Several courts require that curative measures be resorted to before manifest necessity can be found. *See, e.g., United States v. Evers,* 569 F.2d 876, 880 (5th Cir. 1978); *Browning v. State,* 707 P.2d 266, 269 (Alaska 1985); *In re: Mark R.,* 294 Md. 244, 263, 449 A.2d 393 (1982); *Cornish v. State,* 272 Md. 312, 320, 322 A.2d 880 (1974); *State v. Cole,* 37 Or.App. 199, 586 P.2d 386, 388 (1978).

With the controlling constitutional standard firmly in mind, we turn to Maryland cases in which manifest necessity has been considered. In *Cornish v. State,* 272 Md. 312, 319, 322 A.2d 880 (1974), the Court stated that "retrial is allowed where the mistrial was caused by an occurrence of an error which could not be cured during the remainder of

the trial, and which could necessitate a reversal on appeal."
Retrial is barred, however, where reasonable alternatives to
mistrial are feasible and could cure the problem. *In re
Mark R.,* 294 Md. 244, 263, 449 A.2d 393 (1982). In *In re
Mark R.,* the Court held that there was no manifest necessi-
ty for mistrial where the State's witnesses could not speak
English; the Court observed that a short continuance in
order to obtain an interpreter would have solved the prob-
lem. *In re Mark R.,* 294 Md. at 264, 449 A.2d 393.

Similarly, in *State v. Caldwell,* 75 Md.App. 225, 231, 540
A.2d 1180 (1988), we held that a mistrial had not been
manifestly necessary. Defense counsel in *Caldwell* dis-
closed during opening statement the identity of a confiden-
tial state informant. The defense was that the defendant
had been "set up" by the informant. The trial judge, *sua
sponte,* declared a mistrial based on the fact that, during
pretrial discovery, defense counsel had abandoned a motion
to compel the disclosure of the informant's identity. The
trial judge reasoned that the State had been unfairly disad-
vantaged because it had to make a last-minute decision
after a jury was impaneled and jeopardy attached whether
to protect its informant or proceed with the prosecution.
*Caldwell,* 75 Md.App. 230, 540 A.2d 1180. In *Caldwell,* we
held that the defense was legitimate, and "to the extent
that there was any factual basis for it ... [defense counsel]
had every right to inform the jury in his opening statement
of what the defense would be." *Caldwell,* 75 Md.App. at
232, 540 A.2d 1180. We further stated that defense counsel
is not required to keep the State informed of his or her
defense strategy, beyond the limited scope of discovery
required by law. *Caldwell,* 75 Md.App. at 232, 540 A.2d
1180.

In a case tried in the federal court in Maryland, *United
States v. Sartori,* 730 F.2d 973, 977 (4th Cir.1984), the Court
held that there was no manifest necessity where the trial
judge recused himself after the jury had been empaneled
and after the government had called four witnesses. The
trial judge had been involved extensively with the American

Cancer Society, although he had no economic interest in the outcome of the trial, and the trial was based on allegations that the defendant had sold a chemical compound as a cancer cure. The Court observed in *Sartori*, 730 F.2d at 976, that the trial judge could have substituted another judge in his place, or could have recused himself *before* empaneling the jury. In reaching this result, the Court stated:

> "In determining whether the trial judge exercised sound discretion in declaring a mistrial, we must consider whether there were less drastic alternatives to ending the trial. If less drastic alternatives . . . were available, they should have been employed. . . ."

*Sartori*, 730 F.2d at 975–76, quoting *Harris v. Young*, 607 F.2d 1081, 1085 (4th Cir.1979), *cert. denied*, 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980).

■ In the instant case, there is just nothing in the record to indicate that the trial judge scrupulously exercised his discretion as required by *Jorn* and found that the declaration of a mistrial was manifestly necessary. The State argues that the situation in the instant case is very close to that in *Arizona v. Washington*. In *Arizona*, however, unlike in the instant case, the State's mistrial motion and the defense's opposition was fully argued before the trial judge. The record in *Arizona* showed that "[t]he trial judge did not act precipitately" but rather that "he gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial." *Arizona*, 434 U.S. at 515–16, 98 S.Ct. at 835–36. This was what convinced the Court in *Arizona* that the trial judge *had* exercised his discretion even though he failed to put his reasons on the record. The motions judge found nothing in the record in the instant case from which the trial judge could have reasonably found that continuing the trial would have been an exercise in futility. The motions judge stated:

"I've gone back and I've relistened to the tape. It's a difficult situation for me to be here and second guess what another judge has done.

"Unless you [the State] can point out some facts, something in the record that would have justified [the trial judge's] action, I see nothing in this record, no facts to support his decision to grant you a mistrial.

\* \* \* \* \* \*

"[The trial judge] could have given a cautionary instruction to the jury to disregard it.

"There were other alternatives for [the trial judge] and he never considered them. If he had considered them and put on the record why he was doing what he did, I would agree with you, I wouldn't second guess him, because he's there and he's looking at the jury, but there's nothing, zero."

We agree with the motions judge. As in *United States v. Jorn* and *In re Mark R.*, there were other avenues open to the trial judge in the instant case. For example, if truly concerned that the defense attorney had ignored his rulings, he might have sent the jury out temporarily and have held the attorney in contempt. If he were concerned about prejudice, the trial judge could have given a cautionary instruction to the jury. Indeed, a holding that these circumstances made mistrial a manifest necessity would be tantamount to our holding that curative instructions cannot be trusted.

 Another important distinction between the instant case and *Arizona* is that in *Arizona* the defense conduct was found to be improper and prejudicial by *both* the trial judge *and* the Supreme Court. Defense counsel in *Arizona* repeatedly referred to the fact that his client was being retried because the prosecutor had withheld evidence from the defense at the first trial.[6] Defense counsel in *Arizona*

---

**6.** Defense counsel stated to the jury:

had also told prospective jurors that there had been evidence hidden from the defendant at the last trial. *Arizona*, 434 U.S. at 497, 98 S.Ct. at 826. The Supreme Court in *Arizona*, noting that there appeared to be no Arizona or other law allowing this sort of evidence, stated, "[w]e therefore start from the premise that defense counsel's comment was improper and may have affected the impartiality of the jury." *Arizona*, 434 U.S. at 497, 98 S.Ct. at 826. This is simply not the situation in the instant case. Appellees' attorneys made clear that they intended to assert self-defense in their case-in-chief. They described ample evidence to support this defense. It appears that the trial judge's ruling in regard to what could or could not be alluded to in opening statement was erroneous because, although a foundation may be required for the introduction of some evidence, this rule does not apply with the same force to opening statements. If an evidentiary foundation were required before anticipated evidence could be mentioned in opening statements, there could be no opening statements which, by definition, precede the introduction of evidence. As we noted in *Caldwell*, if there is a factual basis for the defense, it may be included in defense counsel's opening statements. Even if the trial judge's ruling was not erroneous, defense counsel complied with the ruling because she did not refer to the conviction or specific acts in her opening, only that the victim was a violent man and had a bad temper.

---

"You will hear testimony that notwithstanding the fact that we had a trial in May of 1971 in this matter, that the prosecutor hid those statements and didn't give those to the lawyer for George saying the man was Spanish speaking, didn't give those statements at all, hid them.

"You will hear that that evidence was suppressed and hidden by the prosecutor in that case. You will hear that that evidence was purposely withheld. You will hear that because of the misconduct of the County Attorney at that time and because he withheld evidence, that the Supreme Court of Arizona granted a new trial in this case."

*Arizona v. Washington*, 434 U.S. at 499, 98 S.Ct. at 827.

■ Similarly, as to appellees' cross-examination of the victim, defense counsel was arguably within the limits of the trial judge's ruling. During the hearing on the motion *in limine,* she twice stated that she thought the issue of the victim's alleged propensity for violence would come up on cross-examination. The trial judge responded that she could use the conviction as evidence at the proper time. Obviously, this was not the "proper time" in the trial judge's opinion, but what was? In any event, it is difficult to see any prejudice flowing from an unanswered, partially asked question. Viewed in its worst possible light, the most damage this question could possibly do was violate the order of proof established by the trial judge. There is no manifest necessity for a mistrial because evidence comes in sooner, rather than later.

The facts in the instant case illustrate precisely why the test for mistrial is a stringent one. At the hearing on the motion to dismiss, appellees' counsel stated:

"As Your Honor knows, the basis for double jeopardy is going through a trial—those of us who are actively involved in the process, we do it all the time, but for civilians, lay people, it is a very harrowing experience, very difficult, something they don't like to go through, in addition, Your Honor, for our clients—this particularly applies to Mr. Frazier, Mr. Charles and Mr. Marshall Frazier, they work.

\* \* \* \* \* \*

"Mr. Frazier's boss has told him—and I'll put him on the stand if necessary to say this—that he can't understand what's going. This case has been going on for over a year and he's been in and out of court umpteen times. Mr. Frazier, as a result of coming here today, doesn't know if he still has a job. It's not a situation where one can simply tell the secretary, 'I'll be back in a couple of hours, hold my calls and take my messages.' These are blue collar workers, Your Honor—most of the people in the system are—and I'm submitting, Your Honor, it's a very heavy prejudice and that's what the double jeopardy

clause is all about, is to protect people like Mr. Marshall and Mr. Charles Frazier from the kinds of things that have happened, and we would submit, Your Honor, that it is clear that it should be dismissed, the motion should be granted."

We think this rather eloquent statement aptly describes the very situation against which the double jeopardy decisions are designed to avoid.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY MONTGOMERY COUNTY.