549 A.2d 1182

**Thomas NANCE**

**v.**

**STATE of Maryland.**

**No. 358, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Nov. 14, 1988.

José Felipé Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Diane Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued Before BISHOP, KARWACKI and FISCHER, JJ.

KARWACKI, Judge.

A Baltimore City jury convicted Thomas Nance, the appellant, of first degree rape, burglary, first degree sexual offense, and of carrying a deadly weapon openly with intent

to injure a person. Judge Arrie W. Davis, who presided at appellant's trial, sentenced him to consecutive terms of life imprisonment for the rape and sexual offense. Additionally, he imposed concurrent sentences of 20 years imprisonment for the burglary and three years incarceration for the deadly weapon violation.

The jury was presented with legally sufficient evidence that in the early morning hours of July 11, 1987, appellant broke into the home of Michelle Johnson. Threatening her with a knife, he forced her to engage in vaginal intercourse and to perform fellatio upon him.

Appellant poses these questions for our review:

1. Did the trial court err when it recalled, sua sponte, the alleged victim to provide the jury with further testimony about the incident in question?

2. Should appellant's sentence for unlawfully wearing and carrying a deadly weapon be merged?

1.

Appellant's first contention concerns the trial judge's participation in eliciting testimony from the prosecuting witness. In response to direct and cross-examination, Ms. Johnson described the violence accompanying appellant's attack upon her in some detail but only referred to the sexual activity in which she was forced to engage as "oral sex" and "intercourse." After the Assistant State's Attorney announced that she had no further questions on redirect examination, the following took place:

THE COURT: Miss Johnson, I hate to do it to you because I know it is very unpleasant, but the State's Attorney has asked you certain questions. Some of the questions related to what happened after the defendant made overtures. I am going to have to ask you, as much as I don't want to do this, to ask you to specifically tell us what he did.

MR. HEDGEPETH [Defense Counsel]: Your Honor, may we approach the bench?

THE COURT: Yes.

(Whereupon, counsel and the defendant approached the bench.)

MR. HEDGEPETH: Your Honor, I would have to object to the Court's attempts to fill a deficiency in the State's case.

THE COURT: Ms. Bruning, we had testimony that the defendant had oral sex with the victim. I am not sure what the Court of Special Appeals is going to make out of that. Oral sex can be a whole lot of things. Excuse me for being flip about it, but it could be having one's mouth on one's big toe. That could be oral sex.

MS. BRUNING [Assistant State's Attorney]: The Court can take judicial notice—.

THE COURT: It is not me. It is the Court of Special Appeals.

MS. BRUNING: I would ask permission to reopen the case and clarify that.

MR. HEDGEPETH: I would object. She had a prompt from the Court. It would seem to me if there is a deficiency in the State's case, it is not the Court's duty to repair it.

THE COURT: I won't repair it. I will permit the State to reopen it.

MR. HEDGEPETH: I'd object.

THE COURT: Very well.

(End of bench conference.)

BY MS. BRUNING:

Q Miss Johnson, just a few more questions. You said the defendant had vaginal intercourse with you. What did you mean exactly? What did he do with you?

MR. HEDGEPETH: Objection.

THE COURT: Overruled.

THE WITNESS: He got me down on the bed and climbed on top of me.

BY MS. BRUNING:

Q  When he climbed on top of you, what did he do then?

MR. HEDGEPETH:  I would object.

THE COURT:  Overruled.

THE WITNESS:  He had sex with me.

BY MS. BRUNING:

Q  What do you mean had sex?

MR. HEDGEPETH:  I would object.

THE COURT:  Overruled.

BY MS. BRUNING:

Q  Refer to the specific parts of the body and any part you had contact with.

A  He fondled my body and inserted his penis into my vaginal area.

Q  Did he penetrate your vagina?

MR. HEDGEPETH:  Objection.

THE COURT:  I sustain the objection as to the form. Where if anywhere did he put his penis?

THE WITNESS:  In my vagina.

THE COURT:  Ms. Bruning?

BY MS. BRUNING:

Q  After that, you said both before and after the vaginal intercourse, that he had oral sex with you.  What do you mean by that?

MR. HEDGEPETH:  I would object.

THE COURT:  Objection is noted for the record.  Overruled.

THE WITNESS:  In other words, we had sex by my mouth on his penis.  He placed his penis in my mouth.

While the presiding judge in a jury trial must exercise restraint in participating in the interrogation of witnesses at trial lest he compromise his or her role as an impartial arbitrator in the eyes of the jury, it is well settled that the judge may question the witnesses to insure that the facts in the case are fully developed. *Cardin v. State,* 73 Md.App. 200, 229, 533 A.2d 928 (1987); *Lane v. State,* 60 Md.App.

412, 429–30, 483 A.2d 369 (1984); *Bell v. State,* 48 Md.App. 669, 678, 429 A.2d 300 (1981).

■ Judge Davis did not abuse the discretion vested in him in this regard in the instant case. He recognized a potential ambiguity in the testimony of the only witness to the *corpus delicti* of the crimes with which the appellant was charged. His actions aimed at clarifying that testimony did not manifest any opinion adverse to appellant. The interrogation was not protracted. There is no allegation that his demeanor or the inflection of his voice in any way prejudiced the appellant. In sum, his inquiries were appropriate and undoubtedly aided the jurors in performing their duty to apply the applicable law to the evidence in determining appellant's guilt *vel non* of the crimes with which he was charged.

### 2.

■ Appellant contends that his conviction of carrying a weapon openly with intent to injure should merge with his conviction of first degree rape and first degree sexual offense. We reject that proposition.

The Fifth Amendment's guarantee to a criminal defendant that he or she will not twice be placed in jeopardy for the same offense, which is applicable to the states by virtue of the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), prohibits multiple punishment for the same offense. *United States v. Wilson,* 420 U.S. 332, 342–43, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975); *Newton v. State,* 280 Md. 260, 263, 373 A.2d 262 (1977). Where a defendant is convicted of more than one crime as a result of one criminal escapade, we determine whether he may be punished for each crime by application of the "required evidence" or "Blockburger" test.[1] *Nightingale v. State,* 312 Md. 699, 702–03, 542 A.2d

---

1. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).

373 (1988); *Newton v. State, supra,* 280 Md. at 268, 373 A.2d 262. In *Newton,* Judge Eldridge, speaking for the Court, set forth the elements of this test:

> If each offense requires proof of a fact which the other does not, the offenses are not the same and do not merge. However, if only one offense requires proof of a fact which the other does not, the offenses are deemed the same, and separate sentences for each offense are prohibited.

*Newton,* 280 Md. at 268, 373 A.2d 262.

When this test is applied to the crimes of which appellant has been convicted, we hold that carrying a weapon openly with intent to injure, which is proscribed by Md.Code Ann. Article 27, § 36,[2] is not the same as his offenses under either Md.Code Ann., Article 27, § 462[3] (first degree rape) or Md.Code Ann. Article 27, § 464[4] (first degree sexual

---

**2.** Article 27, § 36, in pertinent part provides:

(a) *In general.*—Every person who shall wear or carry any dirk knife, bowie knife, switchblade knife, star knife, sandclub, metal knuckles, razor, nunchaku, or any other dangerous or deadly weapon of any kind, whatsoever (penknives without switchblade and handguns, excepted) concealed upon or about his person, and every person who shall wear or carry any such weapon, chemical mace or tear gas device openly with the intent or purpose of injuring any person in any unlawful manner, shall be guilty of a misdemeanor....

**3.** Article 27, § 462 states:

(a) *What constitutes.*—A person is guilty of rape in the first degree if the person engages in vaginal intercourse with another person by force or threat of force against the will and without the consent of the other person, and:

(1) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably concludes is a dangerous or deadly weapon; or

(2) Inflicts suffocation, strangulation, disfigurement, or serious physical injury upon the other person or upon anyone else in the course of committing the offense; or

(3) Threatens or places the victim in fear that the victim or any person known to the victim will be imminently subjected to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or

(4) The person commits the offense aided and abetted by one or more other persons.

**4.** Article 27, § 464 mandates:

offense).

Article 27, § 462 requires proof of vaginal intercourse with the victim and Article 27, § 464 requires proof that the offender engaged in a sexual act, as defined in Article 27, § 461, with the victim. Neither must be proved to obtain a conviction under Article 27, § 36. Furthermore, although one of the alternative elements in the commission of both first degree rape and first degree sexual offense is that the accused "[E]mploys or displays a dangerous or deadly weapon," there is no requirement that prior to that employment or display that he have carried that weapon openly with intent to injure, a required element of the offense punishable by Article 27, § 36. *Cf. Brooks v. State,* 284 Md. 416, 419–23, 397 A.2d 596 (1979) (holding that carrying a weapon openly with intent to injure did not merge into assault with intent to murder); *Williams v. State,* 205 Md. 470, 478–80, 109 A.2d 89 (1954) (holding that breaking and entry with intent to commit a felony, to wit, grand larceny, did not merge with grand larceny); *Walker v. State,* 53 Md.App. 171, 202–04, 452 A.2d 1234 (1982) (holding that carrying a weapon openly with intent to injure did not merge into attempted first degree rape conviction).

█ Finally, appellant asserts that even if the conviction under Article 27, § 36 did not merge into the convictions

---

(a) *What constitutes.*—A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

(1) With another person by force or threat of force against the will and without the consent of the other persons, and:

(i) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably concludes is a dangerous or deadly weapon; or

(ii) Inflicts suffocation, strangulation, disfigurement, or serious physical injury upon the other person or upon anyone else in the course of committing the offense; or

(iii) Threatens or places the victim in fear that the victim or any person known to the victim will be imminently subjected to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or

(iv) The person commits the offense aided and abetted by one or more other persons.

under Article 27, § 462 or Article 27, § 464, nevertheless, we should construe these statutes as expressing the intent of the General Assembly against punishment for each of the crimes separately. His reliance on the rule of lenity (sometimes called merger by legislative intent) in support of this assertion is misplaced.

The prohibition against carrying a weapon openly with intent to injure was originally enacted by Chapter 375 of the Acts of 1886. Sections 462 and 464 of Article 27 were enacted 90 years later by Chapter 573 of the Acts of 1976. There is no indication that the legislature intended that punishment for these sexual offenses should preclude punishment for conduct proscribed by Article 27, § 36. Moreover, when we examine the conduct proscribed by Article 27, § 36 with the conduct prohibited by either § 462 or § 464 of Article 27, the offenses:

(1) do not constitute conduct proscribed by a *"single statute,"*

(2) are not "of necessity closely intertwined," and

(3) do not relate to each other in such a manner that one offense is "necessarily the overt act" of the other. Nor is this a situation in which one of the statutes "by its very nature affects other offenses."

*Dillsworth v. State,* 308 Md. 354, 367, 519 A.2d 1269 (1987) (*quoting Johnson v. State,* 56 Md.App. 205, 215, 467 A.2d 544 (1983), *cert. denied,* 299 Md. 136, 472 A.2d 999 (1984)). Because these relationships between the offense punishable by Article 27, § 36 and the offenses punishable by either § 462 or § 464 of Article 27 are not present, we will not assume an ambiguity in the legislative intent which would call the rule of lenity into play.

JUDGMENT AFFIRMED: COSTS TO BE PAID BY THE APPELLANT.