555 A.2d 1070

**Gloria CRUTCHFIELD**

**v.**

**STATE of Maryland.**

**No. 997, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

April 3, 1989.

Certiorari Granted July 25, 1989.

Benjamin Lipsitz, Baltimore, for appellant.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Thomas E. Hickman, State's Atty. for Carroll County, Westminster, on the brief), for appellee.

Argued before BISHOP, BLOOM and ROBERT M. BELL, JJ.

BLOOM, Judge.

Gloria Crutchfield appeals from an order of the Circuit Court for Garrett County denying her motion to dismiss, on double jeopardy grounds, an indictment charging her with murder and other offenses.

The indictment against appellant was originally filed in the Circuit Court for Carroll County. Appellant moved in that court for an order suppressing certain statements she had made to various police officers, asserting that those statements were made in response to custodial interrogations conducted before she was advised of her *Miranda* rights. After an evidentiary hearing, the suppression motion was denied, the hearing judge having concluded that appellant had either received a *Miranda* warning or was

not in custody when she made each of the statements that were the subject of her motion.

At appellant's request, the case was removed to Garrett County for trial. After the trial had commenced but before any of the police officers testified, appellant renewed her motion to suppress, but the trial judge, relying on the decision of the motions hearing judge, denied the renewed suppression motion. The officers testified, and the substance of four oral statements made by appellant at the scene of the homicide were admitted in evidence. It was only after all four of those statements had been related to the jury that it became apparent to the trial judge that two of those statements—extremely damaging to appellant because they were inconsistent with her other statements and her self-defense theory of defense—had been made in response to interrogation while appellant was in custody and before she had been advised of her *Miranda* rights. The trial came to an abrupt halt, and the judge and counsel adjourned to the judge's chambers for a discussion as to how to deal with the problem.

No record was made of the proceedings in chambers, but we can deduce certain facts from what was put on the record later. The trial judge immediately expressed his belief that the damage done to appellant's case by the admission of highly prejudicial evidence that should have been excluded was irreparable. He suggested that defense counsel move for a mistrial. Counsel admittedly voiced no disagreement with the judge's assessment, but he refused to move for or consent to a mistrial, indicating that he fully intended to preserve appellant's right to move for a dismissal of the indictment if the court declared a mistrial without appellant's consent. Nevertheless, the trial judge, on his own motion, declared a mistrial. We do not know if any alternative to a mistrial was considered or discussed; we do know, from the trial judge's comments on the record, that appellant neither objected to nor consented to the court's *sua sponte* mistrial declaration.

Having already been put in jeopardy by the commencement of the aborted trial, appellant moved for dismissal of the indictment on the ground that to try her again would put her twice in jeopardy for the same offense. That motion was denied, and this appeal was promptly noted to raise a single issue:

> Whether, having declared a mistrial, without appellant's consent, because statements made by appellant during custodial interrogation conducted without *Miranda* warnings had been admitted in evidence, the trial court erred in denying appellant's motion to dismiss on double jeopardy grounds.

We believe the trial court did err in denying the motion to dismiss the indictment. That error, of course, is what brings the matter to our attention. It was the earlier error, however, the declaration of a mistrial without the defendant's consent, that made it constitutionally impossible to retry her.

As Judge Moylan, writing for this Court in *West v. State*, 52 Md.App. 624, 451 A.2d 1228 (1982), pointed out, there are four distinct categories of double jeopardy presently recognized for purposes of federal constitutional law:

1. "Classic" former jeopardy, arising out of the common law pleas in bar of *autrefois convict* and *autrefois acquit.*

2. Simultaneous jeopardy, primarily involving issues of merger and multiple punishment.

3. Collateral estoppel.

4. The mistrial/retrial problem, which became firmly established as an aspect of double jeopardy constitutional law in *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

*West*, 52 Md.App. at 628, 451 A.2d 1228.

There are, in turn, two distinct subspecies of mistrial/retrial double jeopardy situations. One, which does not concern us here, is where the mistrial is declared at the request of the defendant. Ordinarily, a defendant's request for a

mistrial is deemed to be a waiver of any double jeopardy claim, the only exception being if the defense request had been prompted by prosecutorial or judicial overreaching. *West,* 52 Md.App. at 631, 451 A.2d 1228.

The second subspecies, the variety that does concern us in this case, is where the mistrial has been declared by the judge *sua sponte* or at the request of the State without the defendant's explicit acquiescence. In those situations, retrial will not be barred if there was a manifest necessity for the mistrial; however, if the trial was needlessly aborted, retrial will be barred. *West,* 52 Md.App. at 630–31, 451 A.2d 1228, citing *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); and *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

The rule, which is easy to recite, is difficult to apply, because, as the Court of Appeals observed in *Cornish v. State,* 272 Md. 312, 322 A.2d 880 (1974), the Supreme Court has not attempted to enumerate those instances when manifest necessity exists. It obviously exists when a jury is unable to agree upon a verdict. *United States v. Perez, supra; Logan v. United States,* 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892).

But what other circumstances meet the test expressed by Mr. Justice Story in the *Perez* case, which is the authoritative starting point of the law on this subject?

We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital

cases especially, Courts should be extremely careful with how they interfere with any of the chances of life, in favour of the prisoner.

*Id.* 22 U.S. at 580.

In *Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), the Supreme Court, by a narrow (5 to 4) majority, upheld a denial of a motion to dismiss on a plea of former jeopardy where the first trial was terminated by the trial judge's declaration of a mistrial *sua sponte*, without the defendant's action and express consent. There it appeared that the trial judge had acted for the protection of the defendant. Although his conduct was characterized as "over-assiduous," "overzealous," and "too hasty," and his solicitude for the defendant as "overeager," the majority was "unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial." *Id.* at 369, 81 S.Ct. at 1527.

Ten years later, the Court retreated somewhat from *Gori*'s emphasis on the motivation of the trial judge to protect the defendant rather than to help the prosecution. In *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), the Court emphasized the defendant's "valued right to have his trial completed by a particular tribunal." *Id.* at 484, 91 S.Ct. at 557.

If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. In the absence of such a motion, the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the

defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.

*Jorn,* 400 U.S. at 485, 91 S.Ct. at 557 (footnotes omitted). The State relies on *Cornish v. State,* 272 Md. 312, 319, 322 A.2d 880 (1974), in which the Court of Appeals said:

A retrial is permitted where the trial judge's action in declaring a mistrial is necessary to protect the interest of the defendant, *United States v. Jorn, supra,* 400 U.S. at 483 [91 S.Ct. at 556], explaining and limiting the holding in *Gori v. United States, supra; Whitfield v. Warden,* 486 F.2d 1118, 1123 (4th Cir.1973). Retrial is allowed where the mistrial was caused by the occurrence of an error which could not be cured during the remainder of the trial, and which would necessitate a reversal on appeal, *State of Illinois v. Somerville, supra* [410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973) ].

■ That quotation begs the question. What is *necessary* to protect the interest of the defendant? Not, as the Supreme Court had initially assumed in *Gori,* what the trial judge may think is necessary, but what is actually necessary to protect the defendant. True, a great deal of deference must be given the trial judge's determination; he is on the scene and therefore in a much better position than the appellate court to form a conclusion as to what is necessary. But we must not lose sight of the fact that the defendant is also on the scene, and great deference should be given his determination as to whether his own interests would be better served by aborting the trial or by submitting his fate to the jury that is already impaneled. We believe that, except in the most extraordinary circumstances, that decision should be left to the defendant, not the judge. As Judge Moylan, writing for this Court in *Ball v. State,* 57 Md.App. 338, 360, 470 A.2d 361 (1984), *affirmed in part and reversed in part on other grounds sub nom. Wright v. State,* 307 Md. 552, 515 A.2d 1157 (1986), expressed it:

When a mistrial is even contemplated for the benefit of a defendant, the defendant has the final choice of whether he wishes a mistrial or not. The very value protected by this subvariety of double jeopardy law is the right of a defendant "in keeping together a tribunal, once it is impaneled, until a verdict has been reached." *West v. State*, 52 Md.App. 624, 451 A.2d 1228 (1982). If a defendant chooses to stick it out to the sweet or bitter end, that is his choice. If the defendant desires a mistrial, he must manifest that desire by asking for it.

As to whether a mistrial is necessary to protect the interests of the defendant, therefore, we must let the defendant make that decision; it should not be made for him by the trial judge.

We turn now to the other mistrial/permissible retrial situation recognized by the Court of Appeals in *Cornish:* "Retrial is allowed where the mistrial was caused by the occurrence of an error which could not be cured during the remainder of the trial and which would necessitate a reversal [of a conviction] on appeal." That situation indeed would be an example of manifest necessity for a mistrial. There is nothing in the record of these proceedings, however, which places this case in that category. *Somerville*, which the Court of Appeals cited for that proposition in *Cornish*, was a case in which the trial judge discovered, after the jury was sworn but before any evidence was presented, that the indictment was defective for failing to charge a criminal offense. Under Illinois law, that defect (1) could not be cured, (2) could be raised at any time, and (3) would necessitate reversal of any conviction.

 In the case *sub judice*, the error was the admission of evidence, prejudicial to the defendant, that should have been excluded. Was the error curable by striking out the evidence and instructing the jury to disregard it because it was unreliable evidence? Both the Court of Appeals and this Court have frequently held (usually at the State's urging) that there is a presumption that a jury can and will

follow curative instructions when they are given. *See Johnson v. State,* 303 Md. 487, 516, 495 A.2d 1 (1985); *Wilhelm v. State,* 272 Md. 404, 423–24, 326 A.2d 707 (1974); *Veney v. State,* 251 Md. 182, 197, 246 A.2d 568 (1968); *Esterline v. State,* 105 Md. 629, 635, 66 A. 269 (1907); *Pinder v. State,* 70 Md.App. 218, 234, 520 A.2d 1101 (1987). In *Worthen v. State,* 42 Md.App. 20, 399 A.2d 272 (1979), there is reference to the fact that some of the finest legal minds have been the harshest critics of curative instructions, calling them "intrinsically ineffective" and referring to their penchant for purging prejudice as "unmitigated fiction." We expressly rejected such criticism, however. *Id.* at 34, 399 A.2d 272.

We are not holding that a curative instruction will always render harmless an error in the admission of evidence prejudicial to the accused. Certainly, it would be reversible error to admit into evidence an involuntary confession or, even worse, the confession of another person which inculpates the defendant with the expectation that a curative instruction will negate the harm. *See, Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). What we do hold is that the trial judge may not decide as a matter of law, over the defendant's objection or without his consent, that the harm is incurable. The defendant may believe that no substantial harm has been done; he may believe that a curative instruction would alleviate the harm; or he may believe that continuing the case before the jury already impanelled, if that jury is properly instructed, is a benefit that would outweigh any residual harm. If the defendant declines to move for a mistrial, choosing to continue the case before the impanelled jury, to which a curative instruction has been given, the error in admitting the evidence will not necessitate a reversal; it will be deemed to be either cured or waived.

In summary, this case is one in which the trial judge, upon concluding that damaging statements which had been admitted into evidence should have been excluded, took it upon himself to declare a mistrial *sua sponte* in order to

protect the rights of a defendant who did not seek or consent to that protection. There being nothing in the record indicating a *manifest,* i.e., palpable, evident, obvious, clear, plain, or patent, necessity for the trial judge to have aborted the trial, a retrial of appellant is barred by the Double Jeopardy Clause of the Fifth Amendment, which is made applicable to proceedings in State courts by the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). It was error to deny appellant's motion to dismiss the indictment.

JUDGMENT REVERSED.

COSTS TO BE PAID BY CARROLL COUNTY.