565 A.2d 686

**Tracey HANKINS A/K/A Tracey Hawkins**

v.

**STATE of Maryland.**

**No. 293, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Nov. 7, 1989.

Ilene S. Cohen, Assigned Public Defender of Annapolis (Alan H. Murrell, Public Defender, on the brief, Baltimore), for appellant.

Valerie Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before MOYLAN, BISHOP and GARRITY, JJ.

GARRITY, Judge.

After his first trial ended in a mistrial, appellant Tracey Hankins was convicted in a second trial by a jury in the Circuit Court for Baltimore City (Steinberg, J. presiding) of possession, possession with intent to distribute and distribution of a controlled dangerous substance, *to wit:* cocaine. He was sentenced to concurrent terms of seven years imprisonment for the distribution and possession with intent to distribute convictions.[1] We are asked to review the following issues:

1. Whether the appellant's second trial was prohibited by double-jeopardy considerations;

2. Whether the trial court abused its discretion in allowing the State to impeach a defense witness, on rebuttal, with evidence of his prior inconsistent statement; and

---

**1.** The trial judge merged the simple possession conviction into the possession with intent to distribute conviction. *See Hawkins v. State,* 77 Md.App. 338, 349, 550 A.2d 416 (1988).

3. Whether the appellant's convictions for possession with intent to distribute and distribution of cocaine merge.

## Facts

At approximately 4:00 p.m. on October 9, 1987, plain-clothes narcotics detective John Wissman of the Baltimore City Police, posing as a drug buyer, was driving his private automobile through the Southwestern Police District of Baltimore City, an area where he had made three recent drug arrests. He stopped his vehicle on South Pulaski Street, encountered two men and told them he wanted to buy cocaine. One of the men told the officer to drive around the block. Officer Wissman circled the block and then encountered the appellant, who asked him the quantity he wanted. Officer Wissman replied "four," and was then instructed by the appellant to pull his vehicle into an alley off Booth Street to avoid detection by "knockers" (police) on the street.

The officer backed his car into the alley and saw the appellant walk up the street and eventually out of his range of vision. When the appellant returned, between sixty and ninety seconds later, he gave the officer four vials of a substance eventually identified as cocaine in exchange for twenty dollars. Detective Wissman then notified back-up officers, who arrested the appellant.

## I.

The appellant's first trial began on November 14, 1988 and went to the jury on November 16, 1988. At 3:25 p.m. on that afternoon, after deliberating approximately three hours, the jury sent the following note:

After three hours of deliberation, the jury has not reached a unanimous decision. As of 3:25 p.m. four jurors said the defendant is guilty whereas eight jurors said defendant is not guilty. Several jurors need to make phone calls, one specifically at four p.m.

Both counsel requested continued deliberation, and the court instructed the jury to continue, also advising the jurors that the clerk would make whatever telephone calls they required at 4:00 p.m.

At 4:15 p.m. the jury sent out a second note, asking how long it would be required to remain if it could not reach a unanimous verdict. The court and prosecutor opined that the jury was deadlocked; the appellant's trial counsel objected to a mistrial and suggested that the jury be dismissed to continue its deliberations the following morning. When that suggestion was not adopted by the court, the appellant's counsel suggested that the court ask the jury whether more time would be helpful in reaching a verdict. The court did so, asking the jury the following:

> What I would like to know is this, but I don't want you to answer it immediately. I want to know if you all feel that if you have a little bit more time, there is some chance of reaching a unanimous decision and rather than have you sit out here and talk about the answer and I get twelve answers, I want you to go back to the jury room and we are going to call you back out in five minutes or so and see what your answer to this court's question is, whether you feel that if you had more time you could reach a unanimous decision, could possibly reach a unanimous decision. So would you please go back to the jury room. Discuss my question and then we will call you in a few minutes for your answer. So let's recess until four-thirty.

Thereafter, the court re-convened and the following transpired:

> THE COURT: Madame forelady, what is the answer?
> THE FORELADY: No.
> THE COURT: No, no meaning it is doubtful that you would reach a unanimous verdict even if I gave you more time?
> THE FORELADY: Yes.

The court then declared a mistrial over the appellant's objection. A new trial began before a different jury the

following morning, November 17, 1988, which resulted in the convictions from which the appellant appeals.

The appellant first contends that his second trial was barred by double jeopardy considerations. Though the Maryland Constitution contains no express double jeopardy provision, the prohibition against being placed in jeopardy more that once is a matter of state common law, and the Supreme Court made the federal (Fifth Amendment) double jeopardy provision applicable to the States via the due process clause of the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Of the four species of double jeopardy set forth in *West v. State*, 52 Md.App. 624, 628, 451 A.2d 1228 (1982),[2] we are only concerned today with circumstances under which a criminal defendant may be re-tried after a mistrial has been declared.

When a mistrial has been declared by the trial judge *sua sponte* without the defendant's explicit acquiescence, re-trial will not be barred if there was "manifest necessity" for the mistrial. *West*, 52 Md.App. at 630–31, 451 A.2d 1228, citing *United State v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). In *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), the court cautioned that manifest necessity as a standard cannot be applied mechanically, but must be viewed in light of the particular problem confronting the trial judge. *Id.* 22 U.S. at 506, 98 S.Ct. at 830. Both this court and the Court of Appeals have discussed the concept of manifest necessity on several occasions. In *State v. Frazier*, 79 Md.App. 118, 130, 555 A.2d 1078 (1989), we turned to Gilbert and Moylan, *Maryland Criminal Law: Practice and Procedure*, 447 (1983) for a short list of circumstances constituting manifest necessity:

---

**2.**    [T]he broad umbrella known as double jeopardy (in its federal manifestation) today embraces four distinct subspecies: (1) classic former jeopardy, arising out of the common law pleas in bar of *autrefois convict* and *autrefois acquit;* (2) simultaneous jeopardy, involving largely issues of merger and multiple punishment; (3) the problems of retrial following mistrial; and (4) collateral estoppel. *West v. State*, 52 Md.App. at 628, 451 A.2d 1228.

The hung jury, inflammatory publicity contaminating the jury in either direction, prolonged sickness of judge or counsel, the movements of an army in time of war—all of these have been held to constitute manifest necessity. *Frazier*, at 129–130, 555 A.2d 1078. In *Crutchfield v. State*, 79 Md.App. 101, 555 A.2d 1070 (1989), we observed:

The rule, which is easy to recite, is difficult to apply, because, as the Court of Appeals observed in *Cornish v. State*, 272 Md. 312, 322 A.2d 880 (1974), the Supreme Court has not attempted to enumerate those instances when manifest necessity exists. *It obviously exists when a jury is unable to agree upon a verdict.* (emphasis added) (citations omitted).

*Id.* [79 Md.App.] at 105, 555 A.2d 1070. Similarly, in *Wooten–Bey v. State*, 308 Md. 534, 520 A.2d 1090 (1987), the Court wrote:

It is perfectly obvious that there is generally a "manifest necessity" for the judge to declare a mistrial when the jury is unable to reach a verdict in a criminal cause, so that ordinarily a retrial is permitted. This teaching of *Perez* has enjoyed not only virtually universal acceptance in the federal courts and state courts of other jurisdictions, *see Cornish* [272 Md.] at 318, 322 A.2d 880, but has been consistently recognized by this Court. We said in *Neal v. State*, 272 Md. 323, 327–328, 322 A.2d 887 (1974):

Although jeopardy attached when the jury was sworn, it was dissipated by the declaration of a mistrial, in the absence of any abuse of discretion.... It has long been settled that under such circumstances, a defendant is not relieved from further liability, any more than he is when his motion for a new trial is granted, or when his conviction is reversed on appeal, [or] where [a] jury, unable to agree on a verdict, was discharged by the court....

*Id.* [308 Md.] at 542–43, 520 A.2d 1090.

■ The circumstances of the case *sub judice* indicate that the trial judge did not abuse his discretion in finding

that manifest necessity existed for the *sua sponte* declaration of a mistrial. Having heard all the evidence in the case on one day (November 15), the decision the jury faced was essentially one of whether to believe the State's witnesses' testimony that the appellant sold cocaine to an undercover officer. It deliberated approximately four hours before it specifically concluded that a unanimous verdict was doubtful. In light of that determination by the jury, the trial judge was within his discretion in finding that continued deliberation or an *Allen* type charge would be futile.[3] Accordingly, as manifest necessity existed for the trial judge to declare a mistrial in the appellant's first trial, the appellant was not exempted by the double jeopardy prohibition of the Fifth Amendment from being tried a second time.

## II.

In his second trial, the appellant argued that at the time of the cocaine sale in question, he knew Detective Wissman was a police officer and therefore would not have sold him drugs. In support of this theory, he called a friend, Ricky Johnson, as a defense witness. Johnson testified that on Monday, October 5, 1987, Detective Wissman, clearly identifiable as a police officer, approached him, the appellant and a third party, searched them, and inquired about drug sales in the neighborhood. Johnson stated that he specifically recalled that the incident occurred on Monday, October 5, because he had been suspended from work that day following a confrontation with his supervisor.

The State cross-examined Johnson as to the October 5 incident. In the course of that cross-examination, the prosecutor questioned him about testimony he had given during the appellant's first trial:

Q. Okay. Mr. Johnson, you have indicated on direct examination that you remembered testifying, excuse me, that you remembered Monday October 5th because you had gotten suspended from work that day?

---

3. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

A. Yes.

Q. Is that right?

A. Yes.

Q. And that the reason you remembered October 5th was that you had gotten into an altercation with your supervisor, is that right?

A. Yes.

Q. Do you remember testifying on a prior occasion, Mr. Johnson? Do you remember being in that chair and testifying before?

A. Yes.

Q. Okay. And do you remember me asking you how you remembered that it was Monday October 5th?

A. Yes.

Q. Do you remember me asking you repeatedly how you remembered it was Monday October the 5th?

A. Yes.

Q. And did you say anything about you had been suspended from work on that date?

A. Excuse me, as I was answering your question, the judge stopped it and said he already done answered your question. I was going to continue talking. The judge stopped me. So you cannot fault me for something that happened like that.

Q. Okay. Let's do it like this, Mr. Johnson. Do you remember me asking you that question three times?

A. And I answered every time you asked me.

Q. And did you ever say anything—Did you say anything the first time about you were suspended from work that day and that was the way you remembered it?

A. As I remember putting it, I put it in different ways, okay. I am not trying to change nothing. I put it as that Monday I was kind of upset as the beginning of everyday a person can get mad. It is something about a day that you can remember it. You don't have to put it in that certain matter every time.

\* \* \* \* \* \*

Q. All right, Mr. Johnson, you remember testifying and I asked you and I asked you repeatedly what, in fact, made you, what, in fact, made Monday October the 5th stand out in your mind and you didn't say anything about being suspended from work that day, did you, Mr. Johnson?

  *  *  *  *  *  *

A. Right, and as I was saying, I kept on specifically saying things on the job, specifically that is all that came out of my mouth, things on the job.

Believing that this testimony was inconsistent with his testimony in the appellant's first trial, the prosecutor advised the court that she intended to call the court reporter on rebuttal to testify as to the substance of that inconsistent testimony. The court ordered that Johnson's earlier testimony at issue from the first trial be reduced to writing. Additionally, the court advised the appellant's trial counsel that he could read into the record any part of Johnson's earlier testimony pertinent to his prior statement, and could also recall Johnson for further explanation. The court reporter then read pertinent portions of the prior testimony to the jury, as well as portions requested by the appellant's counsel. In the relevant parts of Johnson's testimony from the appellant's first trial, he said nothing of October 5th having special significance to him because of a suspension from work.[4]

---

4. In pertinent part, Johnson's prior statement regarding his reasons for remembering the date of the purported prior meeting with Detective Wissman was as follows:

 THE WITNESS: This is cross-examination by Miss Wood.
[Prosecutor]:
Q. Is there anything in particular that makes you remember that it was a Monday?
[Johnson]:
A. I know it was rush hour. Everybody was getting out of school, off of work.
Q. Rush hour comes every day, Monday through Friday.
A. Right.
Q. So what made you think this day was a Monday?
A. I go to work every day. I know what day it was.

The appellant argues that this evidence was improper as rebuttal because it was offered for purposes of impeachment and the State failed to lay a proper foundation for it. We disagree.

The determination of what constitutes rebuttal testimony lies within the sound discretion of the trial judge. His ruling will be reversed only where it is shown to be "both manifestly wrong and substantially injurious." *Campbell v. State*, 65 Md.App. 498, 507, 501 A.2d 111 (1985), quoting *Huffington v. State*, 295 Md. 1, 452 A.2d 1211 (1982). Evidence that explains, is in direct reply to, or contradicts matters raised by the defendant, or tends to impeach the credibility of a defense witness, is properly admitted on rebuttal. *Id.* [65 Md.App.] at 508, 501 A.2d 111. As evidence of defense witness Johnson's prior inconsistent statement served to impeach his credibility, it was properly admitted on rebuttal.

■ Further, the State clearly laid a foundation for its use of Johnson's prior statement. The purpose of laying a foundation is to allow the witness to reflect on the prior

Q. So you are not certain what day it was? Is that right?
A. It was on Monday, the 5th.
Q. How do you know it was Monday the 5th?
A. On my calendar it had Monday the 5th.
Q. How do you know it was Monday the 5th and not Tuesday the 6th?
"Because it was Monday the 5th."
Excuse me. That was the answer, "Because it was Monday the 5th."
Q. How do you know it wasn't Monday the 4th?
A. Because it was Monday the 5th.
Q. What made that day special, Monday the 5th?
A. Because that's the day I punched in to begin the week Monday.
Q. Don't you punch in Monday, Tuesday?
A. On the 5th.
Q. You do punch in?
A. Five days a week.
Q. So was there anything that made this day unusual, Mr. Johnson?
A. It's the first time I have been pulled up by a police officer, right.
Q. And is that how you remember that day?
A. Yes, I do.

statement so that he can admit or deny it, or make such explanation of it as he considers necessary or desirable. *Bane v. State*, 73 Md.App. 135, 155, 533 A.2d 309 (1987). To impeach a witness with a prior oral inconsistent statement, the examiner must inform the witness of when, where, and to whom the statement was made, and of its substance. *Id.* at 155, 533 A.2d 309.

In the case *sub judice*, the prosecutor informed witness Johnson of when and to whom he gave his prior testimony and of its substance. A proper foundation had been laid; therefore, because Johnson was given sufficient information concerning his prior statement, he had the opportunity to reflect on it. Despite that opportunity, he maintained that, at the first trial, he had cited work problems as the reason for remembering the October 5th date. Under these circumstances, it was proper for the State to adduce evidence in rebuttal which contradicted and impeached Johnson's credibility on this point and thus the truth of his story that he and the appellant had met and knew of Detective Wissman prior to the cocaine sale. We hold that the rebuttal evidence was properly admitted.[5]

### III.

The appellant argues that the crime of possession with intent to distribute cocaine is a lesser-included offense of the crime of distribution of cocaine and, hence, his sentences for these two crimes should have been merged by the trial court. We agree that the two crimes should merge.

---

5. The appellant is correct that, before the State could impeach Johnson with a prior written statement, foundational requirements necessitated that he be shown the written statement first. *Bane v. State*, 73 Md.App. 135, 155, 533 A.2d 309 (1987); *Whisner v. Whisner*, 122 Md. 195, 89 A. 393 (1914). The fact that the court ordered Johnson's testimony transcribed, however, in no way prejudiced the appellant. Again, the trial judge allowed the appellant to select any portions of the transcript which he believed were necessary to clarify witness Johnson's prior testimony, and to provide any additional explanation of the inconsistent testimony.

Where a defendant is convicted of more than one crime as a result of one criminal act or transaction, we determine whether he may be punished for each crime by applying the "required evidence" test. *Nance v. State*, 77 Md.App. 259, 264, 549 A.2d 1182 (1988); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). That test is as follows: If each offense requires proof of a fact which the other does not, the offenses do not merge; if only one offense requires proof of a fact which the other does not, however, the offenses are deemed the same and separate sentences for each offense are prohibited. *Newton v. State*, 280 Md. 260, 268, 373 A.2d 262 (1977). In other words, as expressed by Judge Eldridge in *Hagans v. State*, 316 Md. 429, 449, 559 A.2d 792 (1989), "All of the elements of the lesser included offense must be included in the greater offense. Therefore, it must be impossible to commit the greater without also having committed the lesser."

Preliminarily, we note that the required evidence test only applies where the same transaction constitutes two distinct violations of the law. *Blockburger, supra,* 284 U.S. at 304, 52 S.Ct. at 182. In *Hawkins v. State*, 77 Md.App. 338, 349, 550 A.2d 416 (1988), for example, we held merger was inappropriate for convictions of possession with intent to distribute and distribution of a controlled dangerous substance under the particular facts of that case. In *Hawkins,* the convictions were based on two separate drug transactions, i.e., possession of a separate quantity of PCP after a prior distribution of it was completed. Here, however, the appellant's convictions of possession with intent to distribute and distribution were based on one criminal transaction. According to police testimony, the appellant obtained and possessed the drug for less than two minutes, solely for sale to the undercover officer. We will therefore apply the required evidence test.

Art. 27, § 286(a)(1) requires proof of possession of a scheduled controlled dangerous substance "in sufficient quantity to reasonably indicate under all circumstances an

intent to ... distribute ...'' [6] The prohibition against distributing CDS is also found in § 286(a)(1). Distribution requires, however momentarily, possession (actual or constructive) of the controlled substance to effectuate its transfer. The offense requires the further step, of course, of actually transferring the substance to another. In a case like the one before us, then, where the possession with intent to distribute and the distribution arise out of the same transaction, distribution includes and subsumes possession with intent to distribute because the evidence required to prove distribution includes control over the substance. Further, contrary to the State's contention, in this context there is no difference between the two offenses as to intent, because in committing the crime of distribution, the intent to distribute is implied in the transfer from one person to another.

To phrase our holding in the language of *Newton, supra,* since only one offense (distribution) requires proof of a fact which the other does not, separate sentences are prohibited. *Id.* [280 Md.] at 268, 373 A.2d 262. The trial judge therefore erred in not merging the convictions for possession with intent to distribute and distribution of a controlled dangerous substance. Accordingly, we shall vacate the appellant's sentence for possession with intent to distribute.

JUDGMENTS AFFIRMED; SENTENCE AS TO COUNT II VACATED; COSTS TO BE DIVIDED BETWEEN APPELLANT AND MAYOR AND CITY COUNCIL OF BALTIMORE.

BISHOP, Judge, dissenting.

I respectfully disagree with the majority on the third issue—whether possession with intent to distribute and

---

6. Art. 27, § 286(a) reads: "Except as authorized by this subheading, it is unlawful for any person: (1) to manufacture, distribute, or dispense, or to possess a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an intent to manufacture, distribute, or dispense, a controlled dangerous substance."

distribution merge. The majority has concluded that they do merge. A careful reading and evaluation of Art. 27, § 286(a) causes me to reach the opposite conclusion.

There are four different crimes contained in § 286(a): manufacture, distribute, dispense or possess a "sufficient quantity to reasonably indicate ... an intent to ... distribute...." We are interested only in distribution and possession with intent to distribute. To distribute does not require any quantitative element, whereas, possession with intent to distribute requires a sufficient quantity to reasonably indicate the intent. To possess with intent does not require actual distribution, whereas, of course, distribution does require the actual distribution. I would chart this as follows:

| Distribution | Possession with Intent |
|---|---|
| 1. Any quantity—sufficient quantity not required. | 1. Sufficient quantity to indicate intent. |
| 2. Actual distribution required. | 2. Actual distribution not required—possession is sufficient. |

Distribution does not require proof of any quantity; possession does require proof of a specific quantity. Distribution requires proof of actual distribution; possession does not require actual distribution.

In *Dillsworth v. State,* 308 Md. 354, 357, 519 A.2d 1269 (1987) the Court reiterated:

"Required" evidence is not to be confused with "actual" evidence. Under an actual evidence approach, offenses would merge whenever the evidence actually adduced at trial is substantially the same for both offenses. We have explicitly rejected the actual evidence test as our general standard for determining merger. *Brooks [v. State of Maryland ]*, 284 Md. [416] at 420–21, 397 A.2d [596] at 598 [1979]. We there said that "the cases in this Court have consistently taken the position that the general test for determining merger of offenses, as well as for deciding whether two offenses should be deemed the

same for double jeopardy purposes, is the required evidence test." In *Brooks* we said that the required evidence test

> "focuses upon the *elements* of the two crimes rather than upon the actual evidence adduced at trial. The 'required evidence' refers to that evidence needed, as a matter of law, to prove the crimes. This was explained in *Thomas v. State,* 277 Md. 257, 267, 353 A.2d 240 (1976):
>
>> 'The required evidence is that which is minimally necessary to secure a conviction for each statutory offense. If each offense requires proof of fact which the other does not, or in other words, if each offense contains an element which the other does not, the offenses are not the same for double jeopardy purposes even though arising from the same conduct or episode.' "
>
> 284 Md. at 420, 397 A.2d at 598 (emphasis in original; citations omitted).

When I focus "upon the elements of the two crimes," *supra,* I conclude that "each offense does require proof of a fact which the other does not" and that "each offense contains an element which the other does not" and, therefore, "the offenses are not the same for double jeopardy purposes even though arising from the same conduct or episode." *Id.* at 357, 519 A.2d 1269.

Based on the above I do not agree with the holding of the majority in Part III. I would hold that there was no merger.