THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALAN LIGHTHART, Defendant-Appellant.

Second District   No. 77-191

Opinion filed August 7, 1978.—Rehearing denied August 29, 1978.

Mary Robinson, Allen L. Wiederer, and Elizabeth Clarke, all of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was convicted of rape and sentenced to not less than 6 nor more than 15 years in the penitentiary. In this appeal he raises two issues: (1) Whether the court erred in denying his motion *in limine* for an order precluding disclosure of a previous conviction for attempted rape and (2) Whether the testimony of the complaining witness was sufficient to establish defendant's guilt beyond a reasonable doubt.

The complainant, an 18-year-old girl, testified that she had had dinner with her parents at a restaurant on the night of June 12, 1976, and had returned to their home with them. She remained there only a few moments and then left to drive back to her own apartment, which was several miles away. At the time she left her parents' home she promised to call her mother when she got to her own apartment. She did not have a telephone in her apartment, so upon arriving home she walked to a gas station about a block away to call her mother. After making the phone call, she left the gas station and was walking back to her apartment when she heard a noise behind her. She turned and was confronted by the defendant. She said she started to run but he tackled her and then held a knife to her throat and forced her to accompany him to his parked car. There, by threatening her with the knife, he forced her to have oral sex with him, and then raped her.

In her testimony about the incident, the complainant said that after the intercourse, "he sat up, lit a cigarette and started talking to me." She further testified that she asked him why he did what he did and that he told her she wasn't the first and that she wasn't going to be the last and that he had just gotten out of prison for a rape in the Quality Inn in 1972. She further said he asked her to have a drink with him and that in order to escape without being harmed, she promised to meet him later at "Uncle Sam's" tavern if he would let her go home and tend to her baby and change her clothes first. She was allowed to return to her apartment, but when she got there she found that she had lost her keys. She knocked on a neighbor's door and asked to use the telephone. The neighbor, Robert Sauklee, testified that when she appeared at his door she was distraught, crying and disheveled and she told him she had been raped and wanted to call the police. She did call the police from that apartment; then went to a nearby hospital where she met the police and gave them a description of the defendant. The defendant was arrested shortly afterward at "Uncle

Sam's" tavern where he had indicated he would be waiting for the complainant.

The defendant told an entirely different story. After first giving the police an admittedly false story about picking up a girl hitch-hiker and having voluntary sex with her in his car, at a different location, he admitted having relations with complainant that evening at the place she indicated, but claimed it was on a voluntary basis. The typed statement he signed said that he had seen complainant around 10 that evening walking on Eighth Avenue toward a gas station. After she went into the gas station he cruised around the block, and after she came out of the gas station and was walking on Eighth Avenue he stopped his car alongside her and asked her if she wanted a ride. He said she answered no, that she only lived a block away. He then asked her if he could get a good time for 20 bucks and she replied that her going rate was $25, to which he said "alright" and told her to get into the car. He testified she did get into the car and that she told him to park on the other side of the street because it was darker there and she had pulled many tricks there. He said they first had oral sex, then regular sexual intercourse; afterward they talked. He told her he had just gotten out of prison after serving a sentence for attempted rape and she told him she had a boy friend she wanted to marry but he would not marry her because she was a prostitute. He asked her to meet him later that night at a tavern known as "Uncle Sam's," and she agreed. She then got out of the car and as she did so she asked him for her money. He told her he had no money and she said if he didn't give her the money he had promised she would call the police. He said he didn't believe she would call the police and drove off and went to "Uncle Sam's" tavern.

The examination at the hospital did not disclose any external evidence of trauma; however, there was evidence that one of her shoes was broken; there were grass stains on her Levis; that her set of house and car keys was found by the police at the approximate spot where she described being chased and tackled by the defendant; that the defendant told a cell mate, Michael Krueger, that he forced a girl to "screw" him at knife-point, and that the complainant was crying, nervous and distraught following the incident.

Before the trial, defense counsel made a motion *in limine* to preclude evidence of the defendant's previous conviction for attempted rape. Invoking the general rule laid down in *People v. Montgomery* (1971), 47 Ill. 2d 510, that evidence of a previous conviction ought not to be admitted where the probative value of such evidence was outweighed by the prejudice to the defendant in disclosing the previous conviction, defense counsel argued that the previous conviction had no probative value in the circumstances of the present case but would be used only to

show a propensity by the defendant to commit the crime in question and, therefore, should be excluded.

■■ We do not agree. Defendant admitted having intercourse with complainant, but claimed throughout that it occurred with her consent. Whether or not complainant consented or was forced was a question of fact for the jury and the evidence under consideration was probative of that fact and admissible. (*People v. Dewey* (1969), 42 Ill. 2d 148, 157; *People v. Fletcher* (1978), 59 Ill. App. 3d 310.) We do not feel that the cases cited by the defendant bear out his argument. It appears to us that the evidence was probative of defendant's mental state and was properly admitted. *People v. Smith* (1972), 6 Ill. App. 3d 259, 262.

The State argues that the general rule has several exceptions; that one of these is where the evidence of a previous crime is relevant to show motive or intent, citing *People v. Wilson* (1970), 46 Ill. 2d 376, and that the evidence of the defendant's previous conviction was relevant and admissible for that purpose. See also *People v. Manzella* (1973), 56 Ill. 2d 187.

Moreover, the State contends that the defendant waived this issue by voluntarily testifying on direct examination as to his previous conviction for attempted rape. Prior to trial the defendant made a motion *in limine* to exclude evidence of his previous conviction for attempted rape. After hearing arguments of counsel, the trial judge denied the motion. His decision may have been partially influenced by the State's argument, as reflected in the report of proceedings, that the defense intended to introduce evidence of the conversation between defendant and the complainant, immediately after the rape, wherein he alleges the complainant stated she was unable to induce her boy friend to marry her because she was a prostitute. The State argued that this was part of the whole conversation, following the rape, and if that part of the conversation was admitted, the defendant's statement made to the complainant in the same conversation to the effect that he had just gotten out of the penitentiary, where he had been serving time for attempted rape, should also be admitted. In addition, such evidence is admissible, if independently relevant, such as to show motive, intent, identity, absence of mistake or accident, or the existence of a common scheme or design. (*People v. Lehman* (1955), 5 Ill. 2d 337; *People v. McDonald* (1975), 62 Ill. 2d 448.) Also, see *People v. Fletcher* (1978), 59 Ill. App. 3d 310, wherein testimony concerning burial of the body of a victim of an unrelated offense was held to have been properly admitted in defendant's trial for murder and aggravated kidnapping.

■■ The decision as to whether a previous conviction of a defendant may be disclosed for impeachment purposes is a decision to be weighed and determined by the trial court, based upon the circumstances involved

and by the nature of the problem, and the trial court must be given considerable latitude in making the decision. *People v. Spicer* (1976), 44 Ill. App. 3d 200, 202-03; *People v. Montgomery* (1971), 47 Ill. 2d 510.

In the present case it is clear that the trial judge properly exercised his discretion in determining that the probative value of the previous conviction was not substantially outweighed by the danger of unfair prejudice. In our judgment, the trial judge's discretion was properly exercised.

The defendant contends, however, that in any event the evidence was not sufficient to prove him guilty of rape beyond a reasonable doubt. He points out that the charge of rape was based almost entirely on the testimony of the complaining witness and she was not a competent witness in a rape case because she was an admitted prostitute. Moreover, she had been previously convicted of petty theft, which impugns her credibility.

■■■ Upon a careful review of the record, however, we are satisfied that the verdict of the jury was based on sufficient evidence to sustain the conviction. The general rule in Illinois is that convincing testimony of the prosecutrix, standing alone, is sufficient to convict, even without corroboration. (*People v. Lee* (1961), 23 Ill. 2d 80.) The verdict of the jury can only be disregarded if it is against the manifest weight of the evidence and, in this case, there are several corroboratory factors which sustain the complainant's testimony and, in our judgment, make it believable beyond a reasonable doubt. First, she had, just before the rape occurred, stopped at a gas station to telephone her mother that she had arrived home. The fact that this call was made was verified by the testimony of her father and, indeed, the defendant's own testimony was that he noticed complainant going into a gas station on foot and waited for her to come out. Thus, she had a legitimate reason to be out on the street at the time she was followed and accosted—she was not acting as a prostitute. Second, there were grass stains on her Levis, which tends to bear out her testimony that she had been tackled and thrown down by the defendant. Third, she appeared at her neighbor's apartment about 10:30 p.m., about the estimated time of the rape—crying and disheveled and told her neighbor she had been raped and wanted to call the police. She did call the police from her neighbor's phone; also, the police officers and Dr. Louis all noted that the complainant was crying and distraught when they saw her, which was very shortly after the incident had occurred. Fourth, her house and car keys were found by the police at the spot she had indicated where she had been thrown down, certainly not in keeping with a casual meeting between the defendant and a prostitute. Fifth, the defendant gave two different stories to the police about the incident, which indicates his second version was not spontaneous, but might have

been self-serving. Sixth, the witness, Michael Krueger, who had previously been in the same tier of cells with the defendant while he was in jail awaiting trial, testified that the defendant had told him of the rape incident that he was charged with and told Krueger that he had first had oral sex with this particular girl and when she resisted having regular sex with him he had used a knife to threaten her and forced her to submit. While under the circumstances this testimony would not be persuasive standing alone, it is, together with the other evidence adduced at trial, corroborative of the fact that an actual rape occurred.

Moreover, on the basis of the record it is a gross exaggeration to say that the complainant was an admitted prostitute. On direct examination she testified that she had run away from a girls' home when she was 16 and that she had gone to Rockford alone. Not having any money she accepted $50 from "a couple guys" in return for having sexual intercourse with them but that she had never done that since. (This was about two years prior to the trial.) It was also brought out complainant had been convicted of petty theft, when she was 16 (about two years prior to the rape trial). A defense witness, Mike Lamb, testified that he had known complainant since she was 14, and her reputation for either truthfulness or chastity was bad. However, the jury also heard evidence that Mike Lamb had been convicted of robbery "about three years ago" and that he was, at the time he testified, a fellow prisoner in the same tier of cells as the defendant and had been in the same tier of cells with the defendant for the past 60 days.

The contention that the evidence was not sufficient to sustain the defendant's conviction beyond a reasonable doubt is, therefore, manifestly without merit. This is not a case which rests solely on the complainant's testimony, but had many corroborating details. The jury was justified in believing her story, rather than the defendant's, and we see no reason to view it otherwise.

The judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

BOYLE and WOODWARD, JJ., concur.