597 A.2d 964

**Betty Lou HOWARD**

v.

**STATE of Maryland.**

**No. 6, Sept. Term, 1990.**

Court of Appeals of Maryland.

Nov. 1, 1991.

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, Victoria S. Keating, Asst. Public Defender, on brief), Baltimore, for petitioner.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

McAULIFFE, Judge.

This case involves the admissibility of two items of "other crimes" evidence. The defendant, Betty Lou Howard, was involved in a public altercation with Shirley Carter on 28 April 1988, in Edgewater, Maryland. Anne Arundel County police officers were summoned to the scene, where they

arrested the defendant and impounded her automobile. A search of the defendant's automobile[1] produced, among many other items, an unloaded pistol from beneath the driver's seat, as well as phencyclidine (PCP), parsley flakes, a small reddish-brown bottle, and cigarette rolling papers from the rear passenger area. The defendant was charged with possession of PCP, possession of PCP with the intent to distribute, carrying or transporting a handgun, assault, and battery. A jury of the Circuit Court for Anne Arundel County found the defendant guilty on all counts, and she was sentenced to 10 years without parole on the charge of possession of PCP with intent to distribute, a two-year concurrent term for battery, and a consecutive two-year term for the handgun conviction.[2] The Court of Special Appeals affirmed in an unreported opinion, and we granted certiorari to consider the following question:

> Did the court below err in holding that evidence of prior bad acts on the part of a defendant, which tends to show that [s]he is in the "habit of selling" drugs, is relevant as proof of the defendant's intent in a case charging the possession of drugs with the intent to distribute them; and did the court further err in holding that admission of the contested evidence in the instant case was in any event harmless?

The two items of "other crimes" evidence introduced by the State, purportedly as evidence of the defendant's intent, involve 1) the defendant's conviction of possession of PCP with the intent to distribute on 9 July 1986, and 2) the alleged sale of PCP by the defendant to Shirley Carter two days before the incident in question, as well as related matters testified to by Shirley Carter. The defendant ar-

---

**1.** The defendant challenged the legality of the search in the trial court and in the Court of Special Appeals, without success. She did not seek certiorari on that issue, and it is not before us.

**2.** The trial judge held that the charge of simple possession merged into the greater offense of possession with intent, and similarly, that the assault merged into the battery.

gues that evidence of her conviction more than 21 months before the incident involved in this case was clearly inadmissible because it showed nothing more than propensity for criminal activity, and its potential for unfair prejudice substantially outweighed any probative value it may have had. She concedes that evidence of her sale of PCP two days before the incident presents a "much, much closer" case for admissibility, but argues it is inadmissible as well. To fully consider the issues, a more detailed explanation of the facts is in order.

## I.

In April of 1988, the defendant and Shirley Carter lived within a block of each other in the Woodland Beach community of Edgewater. Their versions of what occurred on 28 April 1988, and indeed on earlier occasions, are widely disparate. Neither version inspires great confidence in its accuracy.

Shirley Carter testified to the following events. At about 6:00 p.m. on 18 April she was preparing to leave her home to purchase beer, when she found her driveway blocked by the defendant's automobile. She asked the defendant "what in the hell" she was doing there. The defendant, seated behind the wheel of her car, held up some money and said she had come to return the money she had taken from Ms. Carter's daughter. Ms. Carter went to the car to retrieve the money, but as she grabbed for it, the defendant locked her teeth onto Ms. Carter's arm and began to move the vehicle forward, carrying Ms. Carter with it. Ms. Carter's aunt saw this activity and attempted to assist by entering the defendant's car from the passenger side, but the defendant was able to use her foot to pin the aunt's neck against the windshield, apparently all the while maintaining her grip on Ms. Carter's arm.

Ms. Carter was finally able to remove the keys from the ignition, after which the defendant alighted from the vehicle, crying and saying: "Why are you doing this to me?"

As the defendant walked away from her car, she was carrying a 7–Up bottle inside a "Crown Royal" bag, and she began dumping the contents of the bottle onto the ground as she walked, saying: "Don't take it away from me." Ms. Carter, who admitted she was a user of PCP at the time of the incident, recognized the odor of the liquid as PCP.

The defendant then returned to her car, with the soda bottle and Crown Royal bag still in her possession, but Ms. Carter was unable to see what the defendant did with those objects after she entered the vehicle. At some point the defendant said she had her handgun with her, and she briefly "pulled it out," without pointing it at anyone, then appeared to attempt to hide it.

Ms. Carter further testified that she had known the defendant for about a year. She was permitted to testify, over the defendant's objection, that she had purchased PCP from the defendant in the past; that she saw the defendant sell PCP, in liquid form [3] and on parsley flakes, at the defendant's home two days before the incident and that the defendant "usually carried" her liquid PCP in a soda bottle within a Crown Royal sack with a drawstring.

The defendant gave a different version. She said she traveled to Kentucky about 16 April 1988, and returned on 26 April to find that her television, VCR, and purse had been stolen. She had seen Shirley Carter on the morning of 28 April at the defendant's home. They argued, because Ms. Carter was angry that the defendant had testified against Ms. Carter's friend two days before. The defendant spent most of the day of 28 April packing and moving from her home. Although many of her possessions had been transported by truck, she had loaded the remainder in her automobile.

---

**3.** Although the witness testified she had seen the defendant sell PCP in liquid form, she explained that "liquid form" meant cigarettes dipped into liquid PCP. It is not clear from the record whether the witness claims to have seen the defendant dip the cigarettes she allegedly sold.

The defendant was taking a young girl home when she stopped near Ms. Carter's home to talk to two male friends. Ms. Carter came to her car and began to argue with her. At some point, the defendant grabbed her purse from Ms. Carter—the purse the defendant said had been stolen from her. Ms. Carter, Ms. Carter's husband, and another man then dragged her from the car and beat her. While someone was holding her on the ground, she saw people going in and out of her car, and saw Ms. Carter's husband take a shotgun from the car. After they let her up, she went to a nearby home and asked someone to summon the police.

The defendant denied having ever seen, or been in possession of, the Crown Royal bag and the 7–Up bottle with PCP in it, or the foil packet of PCP–laced parsley that was later taken from her car by the police. She admitted the pistol was hers, but said she had packed it in the rear portion of the car, in the manufacturer's box.[4] The defendant testified that she had only known Shirley Carter since 14 April 1988. She denied selling PCP to Ms. Carter.

Police officers who arrived on the scene described the defendant as "dazed," "almost incoherent," having bloodshot and dilated eyes, apparently unable to comprehend what was occurring, and "either intoxicated or high on something." The defendant first testified that she might have been "high" on PCP because she had taken a few "drags" from a cigarette offered to her earlier that morning by Shirley Carter, without knowing the cigarette contained PCP. She later said she was not "high," but was dazed from the beating she had been given. The police testified they observed a visible bite mark on Ms. Carter's upper arm.

Police officers who conducted the search of the defendant's vehicle testified that they had removed a large assortment of personal items, suitcases, clothing, household goods, and the like. From the area behind the driver's seat, on top of a pile of other items, but visible as soon as the car

---

4. The empty manufacturer's box was found in the rear of the vehicle.

door was opened, they removed a Crown Royal cloth bag containing a 7–Up bottle with liquid contents. Subsequent analysis disclosed the contents to be approximately one and one-half ounces of liquid PCP. From the hatchback area of the Mustang automobile the police removed, along with many other items, four jars of parsley flakes, a jewelry-type box containing a foil packet of parsley flakes, and a pack of Zigzag rolling papers. From an unidentified location within the vehicle, the police removed a small reddish-brown bottle similar to those commonly used to package food coloring.

Officer Dennis Howell testified as an expert on controlled dangerous substances. He said that an ounce and one-half of liquid PCP would be sufficient to coat four and one-half to six ounces of parsley flakes; that liquid PCP had a street value of between two hundred and five hundred dollars per ounce; that if the 16–ounce soda bottle were full of PCP it would have a street value of between eight and ten thousand dollars; that PCP is often packaged in green bottles to disguise it as a soft drink; and that bottles similar to the small reddish-brown bottle found in the defendant's vehicle are often used to sell one or two ounce quantities of liquid PCP. He described the contents of the small foil package as parsley laced with PCP, having a street value of ten to twenty dollars.

During cross-examination of the defendant, the State introduced, over objection, evidence that the defendant had been convicted of possession of PCP with intent to distribute on 9 July 1986. In colloquy with the court following the defendant's objection, the prosecutor made it clear he was not offering this evidence for impeachment of the witness's credibility, but as evidence bearing on the defendant's intent in possessing the PCP. The trial judge later instructed the jury they could consider this evidence only on the question of the defendant's intent.

II.

We discussed certain of the principles governing admissibility of evidence of "other bad acts" in *Harris v.*

*State,* 324 Md. 490, 597 A.2d 956 (1991), filed today. We there held that evidence of the defendant's conviction of possession of heroin with intent to distribute was not admissible as evidence of the defendant's intent with respect to cocaine possessed more that 21 months later, because that evidence possessed no special relevance or link to the crime charged, and was merely evidence of criminal character. *Id.* at 504, 597 A.2d at 964. We perceive no significant difference between the evidence offered in *Harris* and the evidence of the earlier conviction in this case. Here, as there, the State offered the evidence as bearing on the question of the defendant's intent, and the evidence simply is not sufficiently probative of that issue. Upon the authority of *Harris,* and the earlier authority of *Ross v. State,* 276 Md. 664, 350 A.2d 680 (1976), we hold that the evidence of the 1986 conviction was inadmissible.

### III.

The more difficult question presented by the facts of this case involves the testimony of Shirley Carter that she purchased PCP from the defendant two days before the events of 28 April, as well as at other times during the preceding year, and that the defendant usually carried her liquid PCP in a 7–Up bottle within a Crown Royal bag.

We said in *State v. Faulkner,* 314 Md. 630, 634, 552 A.2d 896 (1989):

> Evidence of other crimes may be admitted, however, if it is substantially relevant to some contested issue in the case and if it is not offered to prove the defendant's guilt based on propensity to commit crime or his character as a criminal.

To the same effect, the Court of Special Appeals stated in *Waddell v. State,* 65 Md.App. 606, 610, 501 A.2d 865 (1985), that

> evidence of other crimes is admissible when the evidence is substantially relevant for some other purpose than to

show that the accused committed the crime on trial because of his criminal character.

If this defendant had testified that she had never seen PCP, and was totally unaware of its appearance or aroma, direct evidence that she had handled and sold PCP would have relevance transcending mere propensity. That, however, is not the case. The defendant never denied her familiarity with drugs in general, or with PCP in particular. Rather, she admitted she was familiar with drugs, but contended the PCP and parsley found in her vehicle were not hers, and had been placed there by others.[5]

█ Under some circumstances, where intent is legitimately an issue in the case, and where by reason of similarity of conduct or temporal proximity, or both, evidence of other bad acts may possess a probative value that outweighs the potential for unfair prejudice, the evidence may be admissible. *Harris v. State, supra,* 324 Md. at 496, 597 A.2d at 958; *Anaweck v. State,* 63 Md.App. 239, 492 A.2d 658 (1985).

█ We conclude that intent was legitimately an issue in this case. The defendant was charged with possession with the intent to distribute, an offense requiring proof of a specific intent. The mere fact of the charge is not dispositive, for it may be that in a given case the intent of the possessor is never in question, but the identity of the possessor is. In a case such as that, where the intent of the possessor is conceded or at least never legitimately in doubt, the State may not in the guise of proving intent be permitted to offer evidence intended and likely to have a different effect. Here, although the principal defense was that the defendant had no knowledge of the existence of

---

**5.** The defendant testified that she left her automobile in the care of others while she was in Kentucky. She implied that those persons, or perhaps others who were in and out of her vehicle while she was being beaten, may have "planted" the PCP and parsley. She suggested their motive may have been revenge for her having accused them of stealing from her, or retribution for her testimony against their friend.

PCP in her vehicle, the defendant did not concede that if she were in possession she would have had the requisite intent. In fact, she argued that if the jury should find against her on her principal defense, they should nevertheless find the State's evidence insufficient to prove an intent to distribute. The issue of intent was real, and the State's other evidence bearing on that issue was not so compelling as to require a finding by the trial judge that there was no necessity for additional evidence bearing on intent. *See State v. Faulkner, supra,* 314 Md. at 640–43, 552 A.2d 896 (discussing the issue of "necessity" with respect to the admissibility of evidence of other bad acts).

◼ Nor was there any basis to exclude the proffered evidence on the ground that it was so complex, or doubtful, or time-consuming that the game was not worth the candle. The witness who could provide the evidence was on the stand, prepared to testify on personal knowledge, with testimony that would take only a very few minutes. The sole question concerning the quality of the proof was whether the jury would believe the witness or would believe the defendant, and that is basically the question that dominates this case. Clearly, if the jury believed the witness the evidence of a prior sale would be clear and convincing.

◼ In evaluating the evidence offered through Ms. Carter, we keep in mind the single basis for admissibility advanced by the State—the use of the evidence to aid the jury in finding the intent of the defendant in the event they should find her to have been in knowing possession of PCP. We conclude that a part of the evidence of other bad acts given by Ms. Carter had a special relevance to the question of intent, and a part did not. Specifically, we find that evidence of a sale of PCP by the defendant two days before the possession in question had special relevance to and a clear connection with her intent on the later occasion. We do not ascribe the same probative value to evidence of other alleged sales of PCP at unspecified times within the previous year, and we conclude that this evidence should not

have been admitted. Additionally, testimony that the defendant "usually" possessed PCP in containers similar to those found in her vehicle, while possibly possessing some relevance on the question of possession,[6] does not address the defendant's intent, and should not have been admitted on that basis.

We turn to the question of balancing the probative value of the evidence we have found to have special relevance against its potential for unfair prejudice. In cases in which criminal agency is contested, there may exist a heightened potential for unfair prejudice that was not present in *Harris*. In *Harris*, the defendant conceded he was the person who possessed the cocaine—the only question was his intent. When, however, the defendant contests criminal agency, there is a danger that evidence legitimately advanced for consideration of intent may be misused by the jury in its determination of criminal agency. We find that under the particular facts of this case, the potential for unfair prejudice is not particularly high. Evidence of the prior sale came from the same witness who gave testimony almost diametrically opposed to that of the defendant. If the jury chose to reject the testimony of Ms. Carter as to how this incident occurred, it is likely they would reject as well her testimony concerning the alleged prior sale. Thus, we do not have the situation of evidence of other bad acts coming from an independent source and influencing the decision of whom to believe in a close case. We conclude the trial judge did not err in finding that the relevance of this testimony was not outweighed by its potential for unfair prejudice. The evidence concerning the alleged sale of PCP by the defendant to Shirley Carter two days before the incident in question was properly admitted.

------

**6.** When evidence of similar conduct is offered to prove that the defendant is the criminal agent, the potential for unfair prejudice is particularly high, and we have consistently required a very strong showing of relevance. *State v. Faulkner*, 314 Md. 630, 638–40, 552 A.2d 896 (1989).

## IV.

The Court of Special Appeals, although holding the evidence of other bad acts admissible, observed that "even if the testimony of the appellant's prior conviction of distribution of PCP was admitted in error, we believe beyond a reasonable doubt that it was harmless." The State has not argued harmless error as a ground for sustaining the convictions, and we do not conclude that the error was harmless. In a case that largely turned on whom the jury was going to believe, the improperly admitted evidence of the defendant's prior conviction may have been the weight which caused the jurors to accept one version rather than the other. Under the facts of this case, that error may well have influenced the jury's decision on all charges, and the error can be rectified only by granting a new trial.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL ON ALL COUNTS; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.