598 A.2d 827

**Roosevelt DAVENPORT, Jr.**

v.

**STATE of Maryland.**

**No. 93, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Dec. 4, 1991.

José Felipé Anderson, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Tarra DeShields–Minnis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County of Upper Marlboro, on the brief), for appellee.

Argued. before MOYLAN, ROBERT M. BELL and DAVIS, JJ.

MOYLAN, Judge.

In enacting what is popularly known as the "Rape Shield Statute" by Laws of Maryland, 1976, ch. 574 and in extending its application to trials for a first or second-degree sexual offense by Laws of Maryland, 1977, ch. 294, the General Assembly, we herein conclude, did not intend to enact a nullity. The shield law is now codified as Art. 27, § 461A and reads, in pertinent part:

"Evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity are not admissible in any prosecution for commission of a rape or sexual offense in the first or second degree."

To effectuate its salutary purpose,[1] a shield law, when properly invoked with respect to charges addressed by the statute, must control the presentation of evidence even with respect to lesser, included charges not expressly addressed by the statute.

The appellant, Roosevelt Davenport, was convicted by a Prince George's County jury, presided over by Judge Darlene O. Perry, of a fourth-degree sexual offense and of

---

1. The purpose behind, as well as the history of, the Maryland shield law is thoroughly examined by Judge (now Chief Judge) Wilner in *Lucado v. State,* 40 Md.App. 25, 28–40, 389 A.2d 398 (1978). *See also Thomas v. State,* 301 Md. 294, 316–319, 483 A.2d 6 (1984), and Note, *Rape and Other Sexual Offense Law Reform in Maryland, 1976–1977,* 7 U.Balt.L.Rev. 151 (1977).

assault and battery.   Upon this appeal, he raises the following two contentions:

1.   That the exclusionary provision of the shield law did not apply to the two offenses of which he was convicted and, therefore, its broad-scale application erroneously prevented him from offering relevant evidence to support his defense of consent;   and

2.   That Judge Perry erroneously failed to permit him to recall defense witness Tammy Jones.

■   The appellant was indicted under a four-count indictment, charging 1) first-degree rape, 2) second-degree rape, 3) a fourth-degree sexual offense, and 4) assault and battery.   At the outset of the trial, the State *nolle prossed* the count charging rape in the first degree.   The trial proceeded on the remaining three counts.   Although the appellant was ultimately acquitted by the jury of second-degree rape, that charge properly survived motions for judgments of acquittal and was a legitimate issue for jury consideration. There was evidence that the appellant overpowered his victim, twice striking her in the jaw, and had sexual intercourse with her against her will.

Whether the appellant committed rape was the dominant question throughout the entire course of the trial.   Indisputably, the shield law controlled the presentation of evidence with respect to the trial of that issue.   On that issue, however, the appellant was acquitted;   the convictions were only for a fourth-degree sexual offense [2] and for assault and battery.

----

**2.**   The only form of fourth-degree sexual offense on which the appellant could properly have been convicted on the facts of this case is that spelled out by § 464C(a)(1):

"A person is guilty of a sexual offense in the fourth degree if the person engages:

(1) In sexual contact with another person against the will and without the consent of the other person."

The verdict was almost inevitably a compromise.   The salient difference, on the facts of this case, between the second count (not guilty) and the third count (guilty) was the difference between vaginal intercourse and sexual touching.   On that issue, however, the prosecuting

As the appellant quite accurately points out, the exclusionary provision of § 461A, by its express terms, applies only to prosecutions for rape or for a sexual offense in the first or second degree. From that premise, the appellant urges the conclusion that evidence as to the victim's chastity which might have been admissible prior to the enactment of the shield law is still admissible on charges not covered by the shield law.

Assuming without deciding that the somewhat inartfully proffered evidence of sexual background in this case might have passed muster before the enactment of the shield law,[3] we are faced with the issue of whether a specific rule of evidence applicable to the trial of a greater count does or does not "trump" a general rule of evidence otherwise applicable to the trial of a lesser count. The question before us is not whether the proffered evidence might have been admissible if the appellant had been on trial only for a fourth-degree sexual offense and for assault and battery. That is another issue for another day.

In terms of the indictment as it stood when the appellant went to trial and which was ultimately submitted to the jury, the "flagship count" was indisputably the highest remaining count (second), charging rape in the second degree. The third and fourth counts were simply attendant

---

witness and the appellant were in full agreement that the sexual behavior involved was that of vaginal intercourse. The dispute between the State and the appellant involved the single issue of whether the victim's participation was forced or consensual. The resolution of that issue, on the facts of this case, would logically have suggested that the appellant could have been guilty of either (the force scenario) or guilty of neither (the consent scenario). It is equally true, on the other hand, that one cannot logically parse a compromise.

**3.** It may well have been the case that the appellant here would have failed because of the inadequacy of the proffer. It may also have been the case that the evidence he sought to introduce would not have been deemed either relevant or material even in the absence of a shield law. It is unnecessary for us to analyze these possibilities, however, in view of our determination to decide what happens when rules collide.

upon it, generally available in case the proof should somehow fail on the greater charge.

When the Legislature determined, as part of a broad national trend, that victims of rape and of the more serious sexual offenses should not be further victimized by embarrassing and demeaning probes into their sexual histories and propensities of marginal, if any, materiality,[4] it is inconceivable that they intended their purpose to be totally thwarted by the inevitable presence of lesser included and other lesser, related charges. It would be, for instance, an exceedingly rare commission of a rape, little more than a law school hypothetical, that would not embrace such lesser crimes as 1) assault with intent to rape, 2) attempted rape, 3) an instance of sexual contact involving a sexual offense of either the third or fourth degree, and 4) assault and battery.

Even where such lesser charges are not expressly pleaded, they are inherently involved and their implicit presence may be made explicit at the request of the defense or the State. *Beck v. Alabama,* 447 U.S. 625, 633, 100 S.Ct. 2382, 2387, 65 L.Ed.2d 392 (1980); *Hook v. State,* 315 Md. 25, 553 A.2d 233 (1989). When such lesser charges, explicit or implicit, go on trial before a jury, they are, we hold, controlled by the specific rules of evidence governing the trial of the greater charge. Any other interpretation would mean that the Legislature had enacted a meaningless provision and would make a farce of legislative intent. When the "flagship count" comes within the shield, inevitably so must its attendant lesser counts that make up its total task force.

■ The appellant also contends that Judge Perry abused her discretion when she refused to allow him to recall to the

---

4. In the recent Court of Appeals decision of *White and White v. State,* 324 Md. 626, 598 A.2d 187 (Sept. Term, 1991), Judge Chasanow thoroughly analyzes the purposes behind rape shield laws and the widespread movement in recent years leading to the enactment of such laws.

stand his sister, Tammy Jones. Ms. Jones had been a defense witness. After her cross-examination, the appellant had every opportunity on redirect to do any rehabilitation he thought necessary. He sought to recall her at a later time for the limited purpose of establishing that she had herself once been a rape victim. The appellant's argument was that Tammy Jones' status as the appellant's sister might presumptively bias her in the appellant's favor, but her status as a rape victim would predispose her to testify against rapists even if the rapist in question were her brother. Judge Perry declined to permit the recall for this strained and attenuated purpose. We see no abuse of discretion.

JUDGMENTS AFFIRMED;
COSTS TO BE PAID BY APPELLANT.