619 A.2d 155

**Earl Godfrey STEVENSON**

**v.**

**STATE of Maryland.**

**No. 421, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Jan. 27, 1993.

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Tarra DeShields–Minnis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank R. Weathersbee, State's Atty. for Anne Arundel County of Annapolis, on the brief), for appellee.

Submitted before ROSALYN B. BELL, MOTZ, and HARRELL, JJ.

MOTZ, Judge.

Appellant Earl Godfrey Stevenson was tried and convicted by a jury in the Circuit Court for Anne Arundel County (Goudy, J. presiding) of second-degree rape and lesser included offenses. The trial court merged the lesser included offenses into the rape conviction and imposed a 15 year sentence, with all but seven years suspended and gave appellant credit for 52 days already served. The court then imposed an identical concurrent sentence upon appellant's plea of guilty to the charge of battery upon the same victim occurring at an earlier date. On appeal, appellant raises the following questions:

1. Did the trial court err in restricting the impeachment of the complaining witness?

2. Did the trial court err in admitting evidence of a battery by appellant upon the complaining witness ten months prior to the incident for which he was on trial?

3. Did the trial court err in permitting the prosecutor to argue the law in closing argument?

4. Did the trial court err in refusing to advise the complaining witness that, as appellant's wife, she possessed a privilege not to testify against him?

(i)

The complaining witness, Merchal Stevenson, had been married to appellant for 10 years. They separated in October, 1989. Ms. Stevenson testified that from that time on she wanted appellant out of her life, and even though she changed the locks on their house, he would not leave her alone. Rather, during the ensuing fifteen months, he frequently visited her at work, followed her around, and slept in a truck outside of their marital home. He constantly demanded that she have intercourse with him because the Bible required that of a wife. Finally, on January 12, 1991, appellant broke into her home, expressed a desire to resume their marriage, demanded that she have intercourse with him, and when she refused, raped her. Her testimony was then elicited as to an incident which occurred the previous

March, in which appellant broke into her home, implored her to have intercourse with him, and when she refused, battered her and cut her hair off with a butcher knife. The admission of this evidence, and other evidentiary rulings by the circuit court, form the basis of this appeal. Further facts will be set forth within as necessary.

### (ii)

Appellant claims that his right to impeach the victim was improperly restricted in several respects. We consider each impeachment question independently.

### (a)

■ The first concerns a tape recording that the appellant apparently made of a conversation he had with Ms. Stevenson. The State claims that the issue is not preserved for review because appellant did not object to the circuit court's ruling to exclude the evidence from the trial. At trial, before appellant attempted to question Ms. Stevenson about this conversation, appellant's counsel, recognizing that the trial court might not allow the jury to hear the tape, requested a discussion in chambers. The court recessed until the following morning, at which time counsel for appellant and the State met with the judge in his chambers where the tape was played (a transcript of the tape has been provided to this Court).

The judge ruled that appellant could not "play this tape in front of this witness [Ms. Stevenson] and say 'Is this what you said' or parts thereof, and my ... I'm sustaining the objection." Defense Counsel then said, "I understand, Your Honor, and if I can have an opportunity to continue cross examination." The State claims that counsel's response to the judge's ruling amounted to a waiver of the issue now advanced on appeal, relying on *Sims v. State,* 319 Md. 540, 549, 573 A.2d 1317 (1990), and *Johnson v. State,* 310 Md. 681, 685–89, 531 A.2d 675 (1987). The State's reliance on these cases is misplaced. Both *Sims* and *Johnson* address the failure to object to jury instructions, which

is governed by Md.Rule 4–325. Objections to evidentiary rulings are governed by Md.Rule 4–323. Defense counsel's attempt to persuade the judge that this evidence was admissible was sufficient, under Md.Rule 4–323(c) to "make[ ] known to the court the action that the party desires the court to take," regardless of counsel's acceptance of the judge's ruling on the matter. *See Dyson v. State,* 328 Md. 490, 615 A.2d 1182 (1992); *Prout v. State,* 311 Md. 348, 535 A.2d 445 (1988).

■■■■ Although preserved for appellate review, appellant's argument with regard to the tape recording is meritless. It is within the sound discretion of a trial court to determine whether extrinsic evidence of relevant matters should be admitted. Thus, in order to reverse the trial judge's ruling on this matter, we must find an abuse of discretion. *Harmony v. State,* 88 Md.App. 306, 321–22, 594 A.2d 1182 (1991). The proponent of evidence bears the responsibility of first establishing its admissibility; this was not done in the case at hand. Appellant failed to demonstrate Ms. Stevenson's consent to recordation of the conversation. In the absence of that consent, admission of the tape recording would have violated the Maryland Wiretap and Electronic Surveillance Law. Md.Code (1957, 1989 Repl.Vol., 1992 Cum.Supp.), § 10–401 through § 10–414, Cts. and Jud. Proceedings Art. Moreover, appellant does not cite any instances in which the tape recording is in any way contrary to Ms. Stevenson's trial testimony. The taped statements that appellant asserts are relevant to her credibility address the fact that Ms. Stevenson was sorry that appellant was "having to go through all this," which was entirely consistent with her trial testimony. Accordingly, the circuit court did not abuse its discretion in excluding the tape recorded conversation, which seems to have been made without Ms. Stevenson's knowledge or permission and in which she does not appear to have made any statement inconsistent with her trial testimony.

(b)

Appellant complains that the trial judge erred in preventing defense counsel from asking Ms. Stevenson two questions on cross examination. These questions were: "Do you recall telling Detective Guy that you had never contacted a lawyer?" "And did you tell Detective Guy that you only stayed at the residence when Mr. Stevenson was not at home?" In response, the State asserts that no proper foundation was laid and, even if it was, the questions were objectionable.

■ "[T]here is no unvarying formula or ritual required for the establishment of a foundation to impeach." *Bane v. State,* 73 Md.App. 135, 155, 533 A.2d 309 (1987) (quoting *Devan v. State,* 17 Md.App. 182, 193, 300 A.2d 705, *cert. denied,* 268 Md. 747 (1973)). The purpose of the foundation requirement is to allow a witness to reflect on the prior statement so that she can admit or deny it, and if necessary or desirable, explain it. *Hankins v. State,* 80 Md.App. 647, 656–57, 565 A.2d 686 (1989). "To impeach a witness with a prior oral inconsistent statement, the examiner must inform the witness of when, where, and to whom the statement was made, and of its substance." *Id.* at 657, 565 A.2d 686. On a review of the record, it is not at all clear that appellant did lay a proper foundation for these questions.

■ In any event, it was not error to sustain the prosecution's objections to the questions. Although a witness may be impeached on matters likely to affect her credibility, "a witness may not be impeached by showing [s]he has made statements which contradict h[er] testimony in respect to facts that are collateral, irrelevant, or immaterial to the issues of the case." *Kantor v. Ash,* 215 Md. 285, 290, 137 A.2d 661 (1958). *Accord State v. Cox,* 298 Md. 173, 178, 468 A.2d 319 (1983). The questions objected to here involve whether Ms. Stevenson told a police detective that she had not contacted a lawyer about certain of her living arrangements. They were immaterial to the matter being litigated. To allow such cross-examination would only have obscured

the real issue involved in the case and needlessly confused the jury. *See Cox,* 298 Md. at 178, 468 A.2d 319.

### (c)

 Appellant next argues that the trial judge erred in not allowing defense counsel to question a witness about whether Ms. Stevenson "drove down to the Commissioner's office to post bail" for appellant. Not only is it within the trial judge's discretion to exclude such collateral evidence, but the evidence had been previously adduced at trial. Ms. Stevenson earlier admitted that she had driven to the Commissioner's office with her friend to post bail for appellant. "Where competent evidence of a matter is received, no prejudice is sustained where other objected to evidence of the same matter is also received." *Jones v. State,* 310 Md. 569, 589, 530 A.2d 743 (1987), *aff'd in part, sentence vacated,* 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916 (1988). It follows then that where competent evidence of a matter is received, appellant sustains no prejudice when cumulative evidence of that matter is excluded.

### (d)

 Appellant further complains that the trial judge should have allowed him to recall a witness. Whether a witness, after her examination has been completed, may be recalled, either to explain her original testimony, or to give additional testimony, is a matter resting solely in the discretion of the trial judge. *Corens v. State,* 185 Md. 561, 568, 45 A.2d 340 (1946). *See also Davenport v. State,* 89 Md. App. 517, 521–522, 598 A.2d 827 (1991). It is clear from the record that the judge discussed the matter at length with counsel for the State and appellant's counsel before deciding to refuse appellant's request to recall the witness. It was well within the court's discretion to refuse to allow the recall of the witness.

### (iii)

The next error alleged by appellant is the admission of testimony by Ms. Stevenson of appellant's battery of her 10

months prior to the incident for which he was on trial. Ms. Stevenson testified that in March, 1990, appellant broke into the house, asked her to make love to him, to "render unto him" because she was his wife and the Bible said a woman should "render unto her husband." When she refused to do so, appellant started scuffling and came at her with "a butcher knife" and cut off her shoulder length hair. Originally, this earlier battery offense was to be tried with the rape offenses; however, after the jury had been chosen, but before the trial began, appellant pled guilty to the battery.

Before considering the merits of this issue, we address the State's contention that the matter is not preserved for review. Appellant objected ten times as the State began eliciting testimony from Ms. Stevenson concerning the previous event. After these objections, most of which were overruled, appellant stopped and did not request that a continuing objection be put on the record to the entire line of questioning. In order to preserve this issue properly and fully, appellant should have made a continuing objection. On this record, however, even in the absence of such an objection, we are reluctant to find that appellant failed to preserve his objection to this testimony.

■ The admission of the testimony as to the previous battery was, in any event, not error. Generally, evidence of other crimes is inadmissible if offered to prove that the accused is guilty of the crime for which he is on trial. *Harris v. State,* 324 Md. 490, 496–97, 597 A.2d 956 (1991). "Evidence of other crimes may be admitted, however, if it is substantially relevant to some contested issue in the case and if it is not offered to prove the defendant's guilt based on propensity to commit crime or his character as a criminal." *State v. Faulkner,* 314 Md. 630, 634, 552 A.2d 896 (1989). Numerous specific exceptions to the other crimes rule have been recognized by our appellate courts, *i.e.,* evidence that tends to establish motive, intent, absence of mistake, a common scheme or plan, identity, opportunity, preparation, or knowledge. *Id.* The Court of Appeals, however, has made it clear that these "recognized 'excep-

tions' to the exclusionary rule are not exclusive." *Harris,* 324 Md. at 501, 597 A.2d 956.

Here, appellant's sole defense to the rape charge was that his estranged wife had consented to intercourse. Thus, defense counsel proclaimed in his opening statement:

[T]hey also have to prove the absence of consent ... there was no consent in this case. And I'll tell you right off the bat. That's our defense, that there was no rape. That Mrs. Stevenson consented to the sexual act, bottom line. She wasn't forced.

. . . .

There was no trauma to the genitalia. There was no evidence of force. Nothing. The [S]tate won't be able to produce any evidence that a rape even occurred, except for her own word. There is no physical evidence here. There are statements given by Mrs. Stevenson that Earl had never forced himself on her before. He made her feel a little guilty. He kept asking and almost begging for her affection. And that's what it took for her to give in, but he never had forced himself on her before, and that's what happened here. She didn't want to have sex with him that morning, but he kept having to ask. He wanted to make love to his wife. And finally she gave in.

In view of this defense, which was vigorously pursued throughout the trial, evidence as to the battery ten months earlier was clearly relevant. As Ms. Stevenson explained when in January, 1991, appellant was "scuffling" and "fighting" with her and telling her, "you're legally my wife and the Bible says a woman should render to her husband" she ultimately stopped fighting because she was afraid of him and "didn't want no more violence." When asked why she was afraid she replied, "[b]ecause we were in a fight before and it didn't turn out very well." She then explained that only ten months earlier appellant had similarly broken into the house while she was sleeping, similarly begged her to make love to him, similarly ordered her to "render unto her husband" and when she refused to do so, cut off her

hair with a butcher's knife. Evidence of the March battery was thus relevant, indeed critical, to counter the consent defense.

It has often been recognized that other crimes evidence is admissible to rebut a consent defense in a rape case. *See, e.g., Carey v. State,* 715 P.2d 244, 248 (Wyo.1986); *State v. DeBaere,* 356 N.W.2d 301, 304–05 (Minn.1984); *Williams v. State,* 95 Nev. 830, 603 P.2d 694, 696–97 (1979); *People v. Oliphant,* 399 Mich. 472, 250 N.W.2d 443, 450–52 (1976); *State v. Smith,* 216 Kan. 265, 530 P.2d 1215, 1219 (1975); *Hunt v. State,* 233 Ga. 329, 211 S.E.2d 288, 290 (1974); *State v. Hill,* 104 Ariz. 238, 450 P.2d 696, 697 (1969); *People v. Weis,* 120 Ill.App.3d 597, 76 Ill.Dec. 18, 458 N.E.2d 157 (1983); *O'Neal v. State,* 170 Ga.App. 637, 318 S.E.2d 66, 67 (1984); *Youngblood v. Sullivan,* 52 Or.App. 173, 628 P.2d 400, 401–02 *rev. denied,* 291 Or. 368, 634 P.2d 1347 (1981); *Commonwealth v. Rough,* 275 Pa.Super. 50, 418 A.2d 605, 612 (1980); *People v. Lighthart,* 62 Ill.App.3d 720, 19 Ill.Dec. 739, 741, 379 N.E.2d 403, 405 (1978); *Fisher v. State,* 57 Ala.App. 310, 328 So.2d 311, 318 *reh'g. denied,* 295 Ala. 401, 328 So.2d 321 (1976); *State v. Gainey,* 32 N.C.App. 682, 233 S.E.2d 671, 672–73 *rev. denied,* 292 N.C. 732, 235 S.E.2d 786 (1977); *People v. Gray,* 259 Cal.App.2d 846, 851–53, 66 Cal.Rptr. 654 (1968); *Williams v. State,* 110 So.2d 654, 661–62 (Fla.), *cert. denied,* 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). *See also* Underhill, *Criminal Evidence* § 206 (6th Ed.1979 supp.) (among the "so called standard exceptions" to the rule against evidence of other crimes is when "the other crime rebuts a particular defense such as ... consent to intercourse.") *See generally Lowery v. State,* 202 Md. 314, 96 A.2d 20 (1953).

Although in most instances the prior crime was a sex offense, in some, as here, it was an assault. *See, e.g., State v. Kortness,* 284 Minn. 555, 170 N.W.2d 210, 212–13 (Minn. 1969); *State v. Kanniainen,* 367 N.W.2d 104 (Minn.App. 1985); *Weis,* 76 Ill.Dec. at 20, 458 N.E.2d at 159; *Fisher,* 328 So.2d at 318. Moreover, such evidence has been held admissible to controvert a consent defense even when, as

here, the defendant himself does not testify. *See, e.g., People v. Burgin,* 74 Ill.App.3d 58, 29 Ill.Dec. 694, 701–03, 392 N.E.2d 251, 258–60 (1979); *Gainey,* 233 S.E.2d at 672–73; *Commonwealth v. Kjersgaard,* 276 Pa.Super. 368, 419 A.2d 502, 504–06 (1980).

The probative value of such evidence is so great that it has been permitted even when the prior bad activity took place *years* before the present charge. *See Williams,* 110 So.2d at 657; *Lighthart,* 19 Ill.Dec. 739, 379 N.E.2d 403. Indeed, many courts have permitted evidence of other previous bad acts by the defendant perpetrated on victims *other* than the prosecutrix to be admitted to counter a defense of consent. *See Williams,* 603 P.2d at 696; *Hunt,* 211 S.E.2d at 290; *Hill,* 450 P.2d at 697; *Williams,* 110 So.2d at 657; *Gray,* 259 Cal.App.2d at 851, 66 Cal.Rptr. at 656; *Lighthart,* 19 Ill.Dec. 739, 379 N.E.2d 403; *Oliphant,* 250 N.W.2d at 450–52; *State v. Morrison,* 310 N.W.2d 135, 137 (Minn.1981); *O'Neal,* 318 S.E.2d at 67; *Carey,* 715 P.2d at 247–48; *Youngblood,* 628 P.2d at 401–02. Some have permitted such evidence where the defendant had not been convicted of any crime in connection with the prior bad acts. *See Rough,* 418 A.2d at 612, *Williams,* 603 P.2d at 696, *Hunt,* 211 S.E.2d at 288; *Williams,* 110 So.2d at 657. *Youngblood,* 628 P.2d at 401–02; *Morrison,* 310 N.W.2d at 137; *Oliphant,* 250 N.W.2d at 450–52; *Fisher,* 328 So.2d at 318; *Kanniainen,* 367 N.W.2d at 106. A few have permitted this evidence when the defendant was acquitted of crimes arising from the previous bad acts. *See Gray,* 259 Cal.App.2d at 850–53, 66 Cal.Rptr. at 655–58; *Carey,* 715 P.2d at 247.

We recognize that in many of the jurisdictions in which these cases arose the courts or legislatures have adopted an inclusionary, rather than exclusionary, other crimes rules. *See, e.g., Gray,* 259 Cal.App.2d at 850–53, 66 Cal.Rptr. at 655–58 (1968); *Williams,* 110 So.2d at 661–62 (Fla.1959). Others, however, follow an exclusionary rule, like that explicated and mandated by the Court of Appeals in *Harris,* 324 Md. at 494–500, 597 A.2d 956, and have still held other

crimes evidence admissible to counter a defense of consent in a rape case. *See, e.g., Pride v. State,* 473 So.2d 576 (Ala.Crim.App.1984); *Morrison,* 310 N.W.2d at 137; *People v. Weis,* 76 Ill.Dec. at 20–21, 458 N.E.2d at 159–60; *Commonwealth v. Rough,* 418 A.2d at 612. Indeed, we have not found a single case in which a court has held that evidence of a related crime, committed less than a year earlier than the rape at issue, by the same defendant, against the same victim, was inadmissible to counter a consent defense.

In the case at hand, as in the cases cited above, the evidence of the March battery was "not offered to prove the defendant's guilt based on a propensity to commit crime or his character as a criminal," but rather was relevant to a "contested issue in the case," *i.e.,* whether Ms. Stevenson consented to intercourse. *Faulkner,* 314 Md. at 634, 552 A.2d 896. Thus, the battery possessed "special relevance transcending mere criminal character." *Harris,* 324 Md. at 504, 597 A.2d 956. Not only was the "necessity for the evidence . . . obvious[,]" but also proof of the March battery was "clear, convincing and uncomplicated"; appellant had pled guilty to the offense. *Id.*

■■■ Finally, we believe that the "probative value" of the evidence as to the March battery substantially outweighs the "potential for prejudice." *Id.* The evidence as to the March battery was obviously potentially inflammatory. Ms. Stevenson's testimony as to it, however, was a very limited portion of her extensive testimony; it is contained in only 6 transcript pages—her testimony consumed more than 120 pages. Moreover, her account in the transcript, considering the subject matter itself, appeared relatively passionless. Furthermore, here, as in *Howard v. State,* 324 Md. 505, 516, 597 A.2d 964 (1991), the evidence of the prior crime came from the same witness who presented the principal evidence against the defendant. Thus, as in *Howard,* "[i]f the jury chose to reject" that witness's testimony "as to how this incident occurred, it is likely they would reject as well her testimony concerning the alleged prior" crime. *Id.* Accordingly, we conclude as the Court of

Appeals did in *Howard*, that "the trial judge did not err in finding that the relevance of this testimony," crucial as it was, "was not outweighed by its potential for unfair prejudice." *Id.*

(iv)

■ Appellant next claims that the State committed reversible error because it argued the law in closing argument. A trial judge has great discretion in controlling the course of closing arguments. "[A]n appellate court should in no case interfere with that judgment unless there has been an *abuse of discretion* by the trial judge of a character likely to have injured the complaining party." *Wilhelm v. State*, 272 Md. 404, 413, 326 A.2d 707 (1974) (emphasis in original). It is true that a prosecutor may not argue the law to the jury even where such argument is consistent with those instructions given to the jury. *White v. State*, 66 Md.App. 100, 118, 502 A.2d 1084 (1986). 'Arguing the law' has been defined as "stating, quoting, discussing or commenting upon a legal proposition, principle, rule or statute." *Bonner v. State*, 43 Md.App. 518, 524, 406 A.2d 646 (1979). Those cases upon which appellant relies concerned cases where the prosecutor read excerpts from cases to the jury, or argued legal definitions, *i.e.*, what is reasonable doubt.

■ The principal prosecutorial argument complained of here was the prosecutor's explanation to the jury of how evidence that had been presented throughout the trial corresponded to the elements of the crime of rape. "Summation provides counsel with an opportunity to creatively mesh the diverse facets of trial, meld the evidence presented with plausible theories, and expose the deficiencies in [opposing ' counsel's] argument." *Henry v. State*, 324 Md. 204, 230, 596 A.2d 1024 (1991), *cert. denied*, — U.S. —, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992). To hold that the prosecutor's closing argument to the jury in this case was "arguing the law" would stifle creative license and prevent counsel from effectively presenting his case. Accordingly, the court be-

low did not abuse its discretion. Moreover, even if the prosecutor's closing was inappropriate, under the standard of *Wilhelm, supra,* it was not "of a character likely to have injured the complaining party" and so any error in permitting it was harmless. *Id.* 272 Md. at 413, 326 A.2d 707.

 Appellant also asserts that the State argued the law in informing the jury that no particular degree of force was necessary to establish the crime of rape. This contention is not preserved for review, however, as appellant failed to object to this portion of the prosecutor's closing argument. *See Mouzone v. State,* 33 Md.App. 201, 208–09, 364 A.2d 58 (1976); Md. Rule 8–131(a).

(v)

 Appellant's final contention is that he had a right to have his estranged wife, Ms. Stevenson, informed of her privilege not to testify against her husband. There is no support for this argument. It is the wife's right alone to decide whether she will testify or invoke the privilege, and her husband has no ability to claim a denial of her right. *See Raymond v. State ex. rel. Younkins,* 195 Md. 126, 128–29, 72 A.2d 711 (1950). Further, if the wife has any right to be advised of her privilege not to testify, that too is her right alone. "It is certainly no right of the accused husband, fundamentally or otherwise. Illustrative of this is the principle that it is no right of an accused, when an accomplice is called as a witness against him, to have that accomplice informed of his constitutional right to claim immunity from testifying on the ground that such testimony might incriminate [him]." *Id.* at 129, 72 A.2d 711. Accordingly, we reject appellant's claim that the trial court erred in denying his request to inform Ms. Stevenson of her privilege not to testify.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.